**AIR CANADA, Plaintiff,**

**v.**

**NATIONAL MEDIATION BOARD; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("IBT"); and Local 732, IBT, Defendants.**

**No. 79 Civ. 4401 (CES).**

United States District Court,
S. D. New York.

Aug. 22, 1979.

Poletti, Friedin, Prashker, Feldman & Gartner by Murray Gartner, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for defendant Mediation Bd.; Stanley Davis, New York City, of counsel.

Herbert K. Lippman, New York City, for defendant Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("IBT") and defendant Local 732, IBT.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff Air Canada, by Order to Show Cause, seeks a temporary restraining order and a preliminary injunction staying the defendant National Mediation Board ("NMB") from conducting a representation election among Air Canada's fleet of passenger service employees. On April 13, 1978, the International Brotherhood of Teamsters ("IBT") filed a representation application covering the clerical and related office, fleet and passenger service employees. In May 1978, the IBT sought and was granted an amendment to the April application dividing the original single class into two classes: (1) the clerical and office employees and (2) the fleet and passenger service employees. The matter before us involves the fleet and passenger employees unit.

To grant plaintiff the relief requested there must be a showing of possible irreparable injury and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Sonesta Int'l Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247, 250 (2d Cir. 1973). Plaintiff's application is denied because plaintiff is not likely to succeed on the merits—we lack jurisdiction to review most of the alleged errors of the NMB. As to the one claim which we may review, failure to investigate, it is clear from plaintiff's papers that plaintiff is likely to fail on the merits. Moreover plaintiff has made an insufficient showing of irreparable harm.[1]

Federal courts have very limited powers to interfere with NMB decisions in representation suits; judicial review is available only for instances of constitutional dimension or gross violation of the statute. *Brotherhood of Ry. & S. S. Clerks v. Association for the Benefit of Non-Contract Employees*, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965) ("*Railway Clerks*"); *Local 732, Intern. Bro. v. National Mediation Board*, 438 F.Supp. 1357 (S.D.N.Y. 1977). Plaintiff contends that the election which the NMB intends to conduct, unless restrained by us, would be in plain violation of the Railway Labor Act 45 U.S.C. §§ 151–188 ("RLA"). Plaintiff, in its brief, raises four possible violations. We will deal with each one separately.

First, it is claimed that NMB's decision to allow 79 employees whose employment was terminated two weeks before the IBT filed its representation application in April, 1978 to vote in the election violates Section 2, Ninth of the RLA, 45 U.S.C. § 152, Ninth, which limits participation in these elections to "employees"—defined in Section 1, Fifth of the Act, 45 U.S.C. § 151, Fifth as "every person in the service of a carrier." NMB rule 1206.6, 29 C.F.R. 1206.6, however provides that:

> Dismissed employees whose requests for reinstatement on account of wrongful dismissal are pending before proper authorities which includes the National Railroad Adjustment Board or other appropriate adjustment board, are eligible to participate in elections among the craft or class of employees in which they are employed at the time of dismissal. This does not include dismissed employees whose guilt has been determined, and who are seeking reinstatement on a leniency basis.

claims however, should plaintiff successfully argue that judicial review is appropriate, the case would fall within one of those exceptions—that established in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). *See Feaster, supra* at 1365.

---

1. Defendant NMB also moves to dismiss the complaint on the grounds that this action is not ripe for adjudication, *United States v. Feaster*, 410 F.2d 1354 (5th Cir. 1969). Except for three exceptions judicial review of administrative determinations is generally limited to final orders or actions. In light of the form of plaintiff's

There is a dispute here as to whether the 79 employees, all ramp workers, were terminated because their work was subcontracted as claimed by Air Canada, or whether they were terminated because of their activities in support of the Union as claimed by these former employees in a suit filed in this District. The NMB's conclusion that these employees were entitled to vote under Rule 1206.6 is not clearly contrary to the language of that rule.[2] Nor is that rule clearly contrary to the statute—indeed it is quite consistent with the purposes of the statute as set out in Section 2 of the Act, 45 U.S.C. § 151a(2) and (3).

Second, it is claimed that 40 current employees will be denied the right to vote by NMB's application of an election eligibility cut-off date of July 20, 1978. It is alleged that this violates "the statutory requirement that the Board investigate a current representation suit", the Board's policy set out in *Erie Railroad Co.,* Case No. R–2913, 3 NMB Determinations 187 (1955) and Section 304.4 of the Mediator's Manual which provide that the cut-off date be the last available payroll after the mediator commences his investigation of the property," and the Board's actual practice, which, it is alleged sets the cut-off date as the date of the furnishing of the employee list by the carrier. First, there is no clear statutory provision indicating that the Board may not under some circumstance impose a cut-off date which happens to be a year prior to the actual conduct of the election, *see System Federation No. 40, Railway Employees Department of American Federation of Labor v. Virginia Ry. Co.,* 11 F.Supp. 621, 627 (D.C.Va.1935), *aff'd* 84 F.2d 641 (1936), *aff'd* 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). Moreover, we do not think that the NMB's conduct was clearly violative of its policy statements. The mediator appeared at Air Canada's premises to conduct his investigation on two occasions. On June 20, 1978, the NMB informed Air Canada that a mediator would be sent to Air Canada's

office on July 10, 1978 "to commence investigation of NMB Case No. R–4847 involving representation of (1) clerical and office employees; and (2) fleet and passenger service employees of Air Canada." In June, 1979 the NMB informed Air Canada that a mediator would be at Air Canada's office on June 26, 1979. The plaintiff proceeds on the assumption that the relevant time period under the policy statements is the date when the mediator arrived to investigate the fleet and passenger application alone (June 28, 1979). The NMB appears to have acted under the assumption that the relevant time period was the date on which the investigation was conducted on both units— July 20, 1978. The choice was the NMB's to make in the first instance and we cannot say that their choice was clearly contrary to their own policy guidelines. Even if it had been contrary to their guidelines, we do not think this rises to the level of a "gross violation of the statute." As to plaintiff's contention about the NMB's actual practice, plaintiff has cited to us four cases *Trans World Airlines,* Case No. R–4549; *American Airlines,* Case No. R–4783; *China Airlines,* Case No. R–4774 and *Royal Hawaiian Air Service,* Case No. R–4807, where the date on which the lists were supplied by the carrier was the operative cut-off date. This is far from a conclusive showing of a pattern of practice. However, even if such a showing were made, we do not think that would be sufficient to vest us with power to review the NMB's determination.

Third, plaintiff contends that contrary to the express statutory requirements of Section 2, Ninth of the RLA, 45 U.S.C. § 152, Ninth, the Board never determined or conducted an investigation to determine that there is a craft or class of "passenger and fleet service" employees on Air Canada. Plaintiff's contention is similar to that made in *Railway Clerks, supra* and can be disposed of in like manner. The Supreme Court, defining the scope of judicial review

---

**2.** The clause "pending before proper authorities which includes the National Railroad Adjustment Board or other appropriate adjustment board," is not exclusive and the NMB could

properly have construed it to encompass a suit such as the one presently pending in this district.

of NMB's decisions, held that judicial review was appropriate to compel the NMB to exercise duties imposed under § 152, Ninth of the Act and that therefore "[T]he Board's action here is reviewable only to the extent that it bears on the question of whether it performed its statutory duty to 'investigate' the dispute." *Id.* 380 U.S. at 661, 85 S.Ct. at 1198. In *Railway Clerks,* the employer argued that the NMB made an arbitrary determination in making a class and craft designation for the employees, without taking evidence or making findings. The Court indicated that

> We should note at the outset that the Board's duty to investigate is a duty to make such investigation as the nature of the case requires. An investigation is "essentially informal, not adversary"; it is "not required to take any particular form."

*Id.* at 662, 85 S.Ct. at 1198. The Court held that the NMB had not failed to perform its statutory duty to investigate in that case because the unit initially chosen by the Board was well recognized under prior Board determinations and had proven satisfactory in actual experience, *Id.* at 665, 85 S.Ct. 1192, and because the Board obtained the views of the parties on the question. *Id.* at 666, 85 S.Ct. 1192. In this case, it is apparent from plaintiff's brief that breaking up the traditional clerical, office, fleet and passenger service employee units into sub-units has been recognized as viable and useful in the airlines industry since the *United Airlines,* R–4550 (March 23, 1977) decision. See Plaintiff's Memorandum of Law at 34. Moreover, a hearing was held by the NMB "with respect to the functions, conditions of employment and possible interchange of office and clerical employees" Plaintiff's Memorandum of Law at 23, providing the NMB with necessary information on the viability of the clerical and related office worker's unit. It appears that, in light of *Railway Clerks* the Board is likely to prevail on its claim that it performed its statutory duty to investigate.

Plaintiff's final claim is that there was no evidence before the NMB of a current representation dispute among Air Canada's passenger and fleet employees as required by RLA Section 2, Ninth and in violation of NMB rules 1203.2, 1206.2 and 1206.3, 29 CRF 1203.2, §§ 1206.2 and 1206.3, because (a) no proper application for the NMB's services under § 2 Ninth has been filed, (b) no proper authorization cards have been filed, and (c) no proper showing of interest by 35% of the employees in the unit has been made. Although plaintiff refers to the RLA, the statute itself contains no clear mandate that any of these procedures be followed. The source of these requirements are the administrative regulations and:

> The courts have uniformly held that "the validity of the showing of interest is for administrative determination and may not be litigated by the parties, either Employer or Union."

*N.L.R.B. v. P.A.F. Equip. Co., Inc.,* 528 F.2d 286, 287 (10th Cir. 1976).

We also hold that plaintiff has failed to show irreparable harm. Plaintiff in ¶ 22 of its Complaint asserts that its relationship with its employees will be harmed by the inclusion of the 79 terminated employees in the balloting and by the posting of the "illegal" election notices, that its operations will be harmed by the month long balloting and that its employees' right to vote will be impaired. We do not see any substantial damage to employer-employee relations resulting from the conduct of this election even if it is ultimately set aside. We are not sure Air Canada can assert injuries to the voting rights of its employees, but in any event the employees rights can be equally protected by setting aside the election after balloting. Finally Air Canada's claim of injury to its operations is speculative and would probably be minimal. We believe the damage caused by staying the election would be substantially greater than any damages which may result by allowing the balloting to go ahead.

For the reasons set forth plaintiff's application for a temporary restraining order and preliminary injunction is denied.

SO ORDERED.