**BRITISH AIRWAYS BOARD, Plaintiff,**

v.

**NATIONAL MEDIATION BOARD; International Association of Machinists and Aerospace Workers, AFL–CIO ("IAM"); and IAM District Lodge No. 100, Defendants.**

No. CV 81 0174.

United States District Court,
E. D. New York.

Jan. 7, 1982.

Poletti Freidin Prashker, Feldman & Gartner, New York City, for plaintiff; Murray Gartner, Edward A. Brill, New York City, of counsel.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Theodore M. Grossman and Sandra M. Schraibman, Trial Counsel, Dept. of Justice, Washington, D. C., and Edward R. Korman, U.S. Atty., E. D. N. Y., Brooklyn, N. Y., for defendant National Mediation Bd.

Highsaw & Mahoney, P. C., Washington, D. C., Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, for IAM and IAM District Lodge No. 100; Sidney Fox, Gerald Richman, New York City, and Clinton J. Muller, Washington, D. C., of counsel.

*Memorandum of Decision and Order*

MISHLER, District Judge.

This action arises out of a representation dispute among certain employees of British Airways Board ("BA") under section 2, Ninth of the Railway Labor Act ("RLA"), 45 U.S.C. § 152, Ninth (1976). In early 1978, the International Association of Machinists and Aerospace Workers (the "IAM") filed an application with the National Mediation Board (the "NMB") for an investigation of the dispute. In June 1980, the NMB issued formal "Findings Upon Investigation" after eight days of hearings. In its 28-page report, the NMB found, *inter alia,* that a craft or class of office clerical employees and a separate craft or class of fleet and passenger employees existed among BA's personnel. The NMB conducted a further investigation to determine whether, in fact, a representation dispute existed within the two separate craft or class of BA employees (application with regard to Office Clerical Employees was docketed as NMB Case No. R–4842; application with regard to Fleet and Passenger Service Employees was docketed as NMB Case No. R–4843). The NMB dismissed the IAM application covering the craft or class of Office Clerical Employees for the union's failure to support the application with the necessary authorizations from employees. However, with respect to BA's Fleet and Passenger Service Employees, the NMB determined the existence of a representation dispute and authorized an all-mail ballot using an eligibility cut-off date of May 14, 1978.

The complaint alleges various substantive violations of the RLA, 45 U.S.C. §§ 151–188 (1976). Plaintiff requests this court to review three determinations made by the NMB in conducting the election which led to its certification of the IAM as the workers' representative. The challenged determinations are: (1) the NMB's definition of the class or craft of workers among whom the election was conducted and for whom the IAM was certified; (2) the NMB's establishment of a May 14, 1978 cut-off date by which BA's workers had to be employed in order to be eligible to participate in the election; and (3) the NMB's decision to tally certain ballots which had been mailed prior to the end of the balloting period (November 21, 1980), but of which the NMB did not learn until after the balloting period had ended.

Numerous motions have been presented by each of the parties. IAM and IAM District Lodge No. 100 have moved pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) for an order dismissing the complaint, or in the alternative, pursuant to Rule 56 Fed.R. Civ.P., for summary judgment. Defendant NMB thereafter moved for judgment on the pleadings, Rule 12(c) Fed.R.Civ.P., or in

the alternative, for summary judgment pursuant to Rule 56 Fed.R.Civ.P. Plaintiff opposes the battery of motions directed against its claims and has cross-moved for summary judgment. Plaintiff has also moved to amend its complaint. In addition to the motions by the parties, Barbara McCloskey, an employee of BA in the capacity of reservations agent, has requested leave to intervene on her own behalf and on behalf of certain of her fellow workers at BA.

Based on the material factual allegations contained in the pleadings which are not in dispute, and those which are beyond dispute as discerned from the record of the administrative proceedings before the NMB, we find that defendants are entitled to summary judgment and that the complaint must be dismissed.

### A. *Intervention*

■ The employees seeking to intervene in this action satisfy the requirements of Rule 24(a)(2) Fed.R.Civ.P. in that they "claim[ ] an interest relating to the ... transaction which is the subject of the action and [they are] so situated that the disposition of the action may as practical matter impair or impede [their] ability to protect that interest [since] the applicant's interest is [not] adequately represented by existing parties." The interests of the employees, who are apparently without funds to prosecute an independent action challenging the NMB's certification of IAM, are unquestionably different than the interests of BA. Since defendants are not unduly prejudiced by intervention, the motion to intervene is granted.

■ Prior to the motion for intervention, a serious question was raised with respect to BA's standing to challenge the NMB's certification of the IAM. At oral argument, the parties conceded that a BA employee whose statutory rights in selecting a representative under the RLA had been affected by the election would unquestionably have standing to challenge NMB certification. We quite agree. Accordingly, because a determination that BA lacked standing would not obviate the resolution

of any of the issues in this case, we assume without deciding that BA also has standing to maintain this suit. *California Bankers Association v. Shultz*, 416 U.S. 21, 44–45, 94 S.Ct. 1494, 1509, 39 L.Ed.2d 812 (1974); *Local 1814 International Longshoremen's Association, AFL–CIO v. The Waterfront Commission of New York Harbor*, 667 F.2d 267 (2d Cir. 1981).

### B. *Requested Leave to Serve and File an Amended Complaint*

■ BA filed its amended complaint more than six months after it had instituted the instant action, more than four months after IAM and IAM District Lodge No. 100 had answered the complaint, and approximately two and one-half months after NMB had moved for dismissal. Nevertheless, the delay was not undue since the new allegations were principally based upon facts revealed in the NMB's papers in support of its motion for summary judgment and not previously known to plaintiff. Because we find that undue prejudice will not result to defendants and there is no reason to believe that leave to file an amended complaint was not made in good faith, plaintiff's motion under Rule 15(a) Fed.R.Civ.P. is granted.

### C. *The Claimed Substantive Violations of the RLA*

Defendant NMB is an independent administrative agency of the United States established pursuant to section 4, First of the RLA, 45 U.S.C. § 154, First. By certification dated December 11, 1980, the NMB certified the IAM as the representative, for purposes of the RLA, of the craft or class of Fleet and Passenger Service Employees, employees of BA. By way of this action, plaintiff seeks declaratory and injunctive relief including, *inter alia*, setting aside the NMB certification which recognized the IAM as the representative of BA Fleet and Passenger Service Employees.

The preliminary question which has been raised by all defendants addresses this court's subject matter jurisdiction over BA's challenges to various determinations

made by the NMB in the context of the representation dispute. Generally, the parties agree that " '[r]epresentation disputes,' which involve controversies surrounding the designation and authorization of representatives of employees covered under the RLA, are committed to the exclusive jurisdiction of the NMB." *Air Line Pilots Ass'n. v. Texas International Airlines*, 656 F.2d 16, 20 n.6 (2d Cir. 1981), *citing, Switchman's Union v. National Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943). The doctrine of exclusive jurisdiction was identified by the Supreme Court in *Switchman's Union, supra,* based on its construction of section 2, Ninth, 45 U.S.C. § 152, Ninth, which reads as follows:

"If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, *it shall be the duty of the Mediation Board,* upon request of either party to the dispute, *to investigate such dispute* and to certify to both parties, in writing within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter. *In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence or coercion exercised by the carrier. In the conduct of any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election,* or may appoint a committee of three neutral persons who after hearing shall within ten days designate the employees who may participate in the election . . . ." (emphasis added).

The Congressional commitment of representation disputes to the NMB for final determination was rooted largely in the belief that judicial involvement in such matters would threaten the expeditious resolution of representation questions affecting common carrier employees, and in turn, threaten the achievement of industrial peace between common carrier employers and employees and the preservation of uninterrupted service by these instrumentalities of interstate commerce. *See e.g., Ruby v. American Airlines, Inc.,* 323 F.2d 248 (2d Cir. 1963), *cert. denied,* 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1964) ("Ruby"); *WES Chapter, Flight Engs. Int'l. Association v. National Mediation Board,* 314 F.2d 234 (D.C.Cir.1962) ("WES Chapter").

Nevertheless, the area for judicial intervention does exist, though it is indeed quite narrow. *See e.g., Virginian Ry. Co. v. System Federation No. 40,* 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937); *General Committee v. Missouri-Kansas-Texas R. Co.,* 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943); *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); *Brotherhood of Railway and Steamship Clerks v. Assoc. for the Benefit of Non-Contract Employees,* 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965) ("Railway Clerks"); *Ruby, supra; WES Chapter, supra.* We concur with those decisions which, in essence, have found that the "narrow space . . . for judicial involvement . . . is open only for 'instances of constitutional dimension or gross violations of the statute,' not for cases where the NMB has allegedly made 'incorrect' decisions." *Local 732, International Brotherhood of Teamsters v. National Mediation Board,* 438 F.Supp. 1357, 1363 (S.D.N.Y.1977) (citations omitted); *see e.g., Railway Clerks,* 380 U.S. at 660–61, 85 S.Ct. at 1197–98; *Air Canada v. National Mediation Board,* 478 F.Supp. 615, 616 (S.D.N.Y.1979) (denying preliminary injunction), 107 LRRM 2028 (S.D.N.Y.1980) (granting motion to dismiss), *summarily*

*aff'd*, 659 F.2d 1057 (2d Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 506, 70 L.Ed.2d 381 (1981) ("Air Canada"). With these extreme limitations concerning our power to review NMB decisions in mind, we turn to the plaintiff's various claims.

### 1. The Statutory Duty to Investigate Under RLA Section 2, Ninth

As stated in plaintiff's brief, "[t]he question presented by the complaint here is whether there is no limit to the Board's discretionary power to determine crafts or classes—whether it is free to make craft or class determinations without explanation, without regard to the facts in a particular case, without reference to its different determinations in other cases presenting similar facts; in short, without any restraint whatsoever." (Plaintiff's Memorandum of Law dated July 29, 1981 at p. 68). Plaintiff concedes that the Board conducted an investigation in form, but contends that it ignored the evidence when making its ultimate determination.

■ A review of the pleadings indicates a desperate effort by BA to transform an unreviewable representation dispute into one which is justiciable by virtue of the claim that the purported investigation was merely a sham. The plaintiff contends that no weight was given to the evidence adduced at the hearing. Reasonably construed, the claim simply attacks the nature of the NMB's findings which falls within its exclusive jurisdiction. Nevertheless, viewing the pleadings in the light most favorable to plaintiffs, defendants' motions for dismissal directed at the pleadings must be denied.

■ Even if we were to agree that an NMB decision ignoring all the evidence gathered in an investigation constituted a gross violation of the statutory mandate, we would nevertheless fail to find such error in the case before us. The NMB is not, as a statutory matter, required to explain how the evidence adduced during the course of an investigation supports its determination. The Board nevertheless stated in its Findings Upon Investigation that it had "considered the entire record in [the] case," (p. 6), as well as "the functional integration . . . of the employees involved." (p. 22). BA's conclusory allegations that the NMB failed to consider the evidence in view of the NMB decision fails to create a justiciable issue.

■ Plaintiff further argues, *inter alia,* that "[t]he finding of a Fleet and Passenger Service Employees craft or class on British Airways is contrary to Board decisions in other cases involving similar facts . . . ." (Plaintiff's Memorandum of Law dated July 29, 1981 at p. 71). Plaintiff's bald allegations are refuted by the existence of other similar NMB cases where the NMB has made craft or class determinations similar to that made in the instant case:

"The class or craft of clerical, office, fleet and passenger service employees has been divided into sub-units in several recent NMB cases. See American Airlines, Inc., No. R–4783 (December 13, 1978); Canadian Pacific Airlines, Ltd. No. R–4853 (September 21, 1978); Royal Hawaiian Air Service, No. R–4807 (May 21, 1978); TAN Airlines, Inc., No. R–1771 (February 3, 1978); United Airlines, Inc., No. R–4550 (March 23, 1977). The NMB has stated that the 'once common characteristics of the original grouping of [clerical office, fleet and passenger service] employees . . . is being eroded by modern technology and job specialization.' Continental Airlines, supra, p.11. Prior NMB determinations, therefore, evidence a trend toward division of the original craft or class in this case into one or more sub-classifications. Obviously, each case may present factual issues of classification based upon 'functional integration' and 'work-related community of interest,' see Royal Hawaiian Air Service, supra, p.7, but a trend is evident. There are prior NMB determinations providing actual bargaining experience with these divided crafts or classes that serve to guide the NMB in determining what type of investigation is necessary."

*Air Canada, supra,* 107 LRRM at 2031.

■ Our limited discussion of the NMB's craft or class determination should not be

construed as a recognition of jurisdiction in the federal courts to review the NMB reviewing process. To the contrary, we hold that the failure of the NMB to explain its decision to the satisfaction of BA fails to confer subject matter jurisdiction upon this court since we find that the NMB has otherwise met its statutory obligation to investigate the representation dispute. *See Air Line Pilots Ass'n. v. Texas International Airlines, supra* (judicial intervention inappropriate to determine whether or not union is a proper representative); *Hawaiian Airlines, Inc. v. National Mediation Board,* Dkt.No. 79–4265 (9th Cir. July 24, 1981) (unpublished); *Sedalia-Marshall-Boonville Stage Line, Inc. v. National Mediation Board,* 574 F.2d 394 (8th Cir.), *cert. denied,* 439 U.S. 881, 99 S.Ct. 218, 58 L.Ed.2d 193 (1978) ("Sedalia-Marshall").

## 2. *The Claimed Violation of the RLA by the NMB's Use of an Election Eligibility Cut-Off Date of May 14, 1978*

The RLA provides that "[t]he majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter." Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth. The term "employee" is defined as "includ[ing] every person in the service of a carrier . . . ." Section 1, Fifth of the RLA, 45 U.S.C. § 151, Fifth. The right of the majority of the craft or class to select a representative is undisputed. What plaintiff challenges is the manner in which the NMB determined the desire of the majority of class or craft of BA Fleet and Passenger Service Employees. BA contends that NMB's use of a cut-off date of May 14, 1978 for election eligibility, a date some two and one-half years prior to the election, disenfranchised almost 25% of the employees in the craft or class in which the election was held in violation of Section 2, Fourth of the RLA.

■ At the outset, we reject BA's implicit contention that the majority of the craft or class of employees must be determined to be the employees as of some certain fixed period of time within which the election is to be held. An individual employee's right to participate in an election must be weighed against the administrative determination that an early cut-off date is necessary to protect the integrity of the vote. In pertinent part, section 2, Ninth of the RLA vests the NMB with the authority "to take a secret ballot of the employees involved . . . in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier."

With a view toward the purposes of the RLA—in particular, the need for the expeditious resolution of labor disputes—Congress charged the NMB with the responsibility of "ascertaining the names of [the employees'] duly designated and authorized representatives . . . ." Section 2, Ninth, 45 U.S.C. § 2, Ninth. In construing the nature of NMB's obligation under the portion of Section 2, Ninth here in question, we are quite mindful of the purposes of the RLA. We also note that "there is no clear statutory provision indicating that the NMB may not under some circumstance impose a cut-off date which happens to be [more than] a year prior to the actual conduct of the election . . . ." *Air Canada,* 478 F.Supp. at 617 (citations omitted).

■ The NMB argues that a cut-off date fixed at the commencement of its investigations prevents carriers from hiring employees at the last minute to change the results of an election. The Mediator's Manual provides that "the cut-off date be the last available payroll after the mediator commences his investigation of the property," a practice which reflects the policy of the NMB. *Id.* Notice was sent to BA on May 12, 1978 advising it that an investigation of NMB cases No. R–4842 and No. R–4843 would commence on May 19, 1978 and, in fact, the NMB representative assigned to the case visited BA on that date. The substantial gap in time between the NMB's first visit and its conduct of the election was due in large part to the delay occasioned by participants in the proceedings before the NMB, and was not occa-

sioned by any lack of diligence on the part of the NMB in conducting its investigation. Given the bitter opposition to IAM's representation of BA's Fleet and Passenger Service Employees, the use of the May 14, 1978 cut-off date was not without a rational basis. Accordingly, we fail to find a gross violation of the statute or an error of constitutional dimension.[1]

### 3. Challenge to the Ballots Misplaced by the Post Office

The voting instructions directed the eligible employees to mail their ballots "so as to reach the post office in the city indicated [Washington, D.C.] no later than 10:00 a.m., November 21, 1980. The count of the ballots on November 21 showed that an insufficient number of ballots had been cast in order for any union to be certified. Fifteen additional votes were required in support of a valid certification.

On December 1, 1980, Mediator Cognata went to the Post Office to pick up ballots in a representation dispute among workers of Republic Airlines. A number of additional ballots (49) pertaining to the BA representation dispute were discovered as a result of that visit. Some ballots were dead ballots (those received by the Post Office after November 21, 1980) and some were found among those ballots which had been set aside for the Republic Airlines election. The NMB examined the postmark dates on the newly discovered ballots and the dead ballots which apparently had been intermingled. BA, without any support, alleges that the intermingling was intentional. Even accepting this allegation as true, the matter is not justiciable.

█ Eighteen ballots examined by the NMB in its investigation were postmarked on or before November 13, 1980. Those few additional ballots would have supported certification. In its certification decision dated December 11, 1980, the NMB stated that it would take administrative notice that ballots mailed on or before November 19, 1980 would have reached the Washington, D.C. Post Office in time for the November 21 count. It is not fatal to the NMB determination to count the additional ballots that this assumption might not have comported with reality in every instance. The rationalization for the subsequent count was "to insure that the count provided an accurate reflection of employee desires at the time a complete count *should have* been made." (emphasis added). Such reasoning is certainly consistent with the purpose and spirit of RLA. In view of (1) the NMB justification for counting the ballots received after November 21, 1980, (2) our failure to discern a gross statutory violation as a result of its decision and (3) the fact that the NMB made a limited investigation of the matter (e.g., an examination of the postmarks), its decision to count the ballots discovered after the November 21 count is unreviewable.

1. To the extent BA argues that the NMB failed to follow its own guidelines, see NMB Representation Manual § 3.503–5, we must concur with the *Air Canada* court and find that BA's arguments fail to present a justiciable controversy:

"The plaintiff proceeds on the assumption that the relevant time period under the policy statements is the date when the mediator arrived to investigate the fleet and passenger application alone .... The NMB appears to have acted under the assumption that the relevant time period was the date on which the investigation was conducted on both units .... The choice was the NMB's to make in the first instance and we cannot say that their choice was clearly contrary to their own policy guidelines. Even if it had been contrary to their guidelines, we do not think this rises to the level of a 'gross violation of the statute.' As to plaintiff's contention about the NMB's actual practice, plaintiff has cited to us four cases ... where the date on which the lists were supplied by the carrier was the operative cut-off date. This is far from a conclusive showing of a pattern of practice. However, even if such a showing were made, we do not think that would be sufficient to vest us with power to review the NMB's determination." *Air Canada*, 478 F.Supp. at 617 (citations omitted).

We also note that the NMB considered and rejected BA's contention that the investigation did not begin on May 19, 1978 in its Denial of Motion for Reconsideration dated August 25, 1980. We are clearly without jurisdiction to review that identical dispute which is once again presented by BA. *See e.g., Sedalia-Marshall,* 574 F.2d at 398.

## CONCLUSION

Defendants' motions for summary judgment are granted; the cross-motions for summary judgment by plaintiff and intervenor are denied, and it is

SO ORDERED.