**LAMOILLE VALLEY RAILROAD COMPANY**

v.

**NATIONAL MEDIATION BOARD.**

Civ. A. No. 81–135.

United States District Court, D. Vermont.

May 4, 1982.

18. *U. S. v. Escobar Noble, supra,* at 36, n. 1.

Gary H. Barnes, Downs, Rachlin & Martin, Burlington, Vt., for plaintiff.

P. Scott McGee, Asst. U. S. Atty., District of Vermont, Burlington, Vt., Sandra M. Schraibman, and R. Lawrence Dessem, Dept. of Justice, Washington, D. C., for defendant; Ronald M. Etters, Nat. Mediation Bd., Washington, D. C., of counsel.

## OPINION AND ORDER

COFFRIN, District Judge.

In this civil action, plaintiff Lamoille Valley Railroad Company (Railroad) challenges certain actions of defendant National Mediation Board (NMB or Board) under the provisions of the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.* Plaintiff contends that defendant failed to perform its statutory duty to investigate a representation dispute and certify a representative, as required by § 2 Ninth of the RLA, 45 U.S.C. § 152 Ninth. Plaintiff therefore seeks a preliminary and permanent injunction compelling defendant to perform its duty to resolve the alleged representation dispute in accordance with the statute.

Defendant moves to dismiss or, in the alternative, for summary judgment in its favor. It asserts that the court lacks jurisdiction over the subject matter of the action and that the amended complaint fails to state a claim upon which relief can be granted. For the reasons stated below, we grant defendant's motion for summary judgment.

### I. *Background*

The essential facts are not in dispute. In February 1981, the Board received from Mr. William Farquharson an Application for Investigation of Representation Dispute by means of which Mr. Farquharson sought Board certification as the Lamoille Valley Railroad mechanics' representative under § 2 Ninth. In the application, Mr. Farquharson identified himself as a mechanical foreman for the Railroad and listed no return address other than the Railroad.[1]

By letter dated February 9, 1981, the Executive Secretary of the Board sent notice of the application for certification to the Railroad, and to the Brotherhood of Railway Carmen of the United States and Canada (the existing representative of the Railroad mechanics).[2] The letter stated that a Board designee would be assigned to investigate the dispute, and requested preliminary information from the Railroad relative to the investigation.

On February 10, 1981, the Executive Secretary of the Board contacted Mr. Farquharson, acknowledging receipt of the application and stating that the Board would withhold processing of the application for 90 days pending Mr. Farquharson's compliance with the reporting and disclosure requirements of the Labor-Management Reporting and Disclosure Act of 1959. The applicant was informed that failure to comply with such requirements would result in dismissal of his application.[3]

Mr. Farquharson never responded to the letter of February 10. On May 14, 1981, after the expiration of the 90 day period, the Board rendered its final decision on the Farquharson application. The Board found that the applicant was not qualified to be certified as an employee representative under § 1 Sixth of the RLA,[4] and dismissed the application.[5]

The present action was filed on May 7, 1981. In its original complaint, the Railroad alleged that the Board had unlawfully failed to investigate and resolve a representation dispute. On June 19, 1981, subsequent to the issuance of the Board's final determination on the Farquharson application, the Railroad amended its complaint to challenge the investigation and the Board's failure to certify a representative. William Farquharson is not, and never has been, a party to this action.

The defendant contends that its conduct in this matter is not subject to judicial

---

1. Declaration of Rowland K. Quinn, Jr., ¶ 3 (File Exh. 6).

2. Declaration of Rowland K. Quinn, Jr., ¶ 4, and Exhibit 1 thereto (File Exh. 6).

3. Declaration of Rowland K. Quinn, Jr., ¶ 5, and Exhibit 2 thereto (File Exh. 6).

4. 45 U.S.C. § 151 Sixth provides, "The term 'representative' means any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or other employees, to act for it or them."

5. Declaration of Rowland K. Quinn, Jr., ¶ 8, and Exhibit 3 thereto (File Exh. 6).

review. It further asserts that plaintiff lacks standing to pursue its cause. We must initially determine whether, or to what extent, the conduct of the Board is subject to review by this court.

## II. *Reviewability*

Section 2 Ninth of the Railway Labor Act[6] vests in the National Mediation Board the power and duty to investigate "any dispute . . . among a carrier's employees as to who are the representatives of such employees" and to certify to the parties and to the carrier the name of the true representative. The starting point for assessing the role of the courts in representation dispute matters is *Switchmen's Union of North America v. NMB*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943) ("*Switchmen's Union*") and its two companion cases.[7]

■ The *Switchmen's Union* trilogy established that representation disputes are committed to the exclusive jurisdiction of the Board. The continuing vitality of the *Switchmen's Union* doctrine was assured in

*Brotherhood of Railway & Steamship Clerks v. Association for the Benefit of Non-Contract Employees*, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965) ("*Railway Clerks*"). See *Air Line Pilots Association, International v. Texas International Airlines, Inc.*, 656 F.2d 16, 20 n.6 (2d Cir. 1981); *Pan American World Airways, Inc. v. International Brotherhood of Teamsters*, 275 F.Supp. 986, 993 (S.D.N.Y.1967), *aff'd per curiam sub nom. Brotherhood of Railway, Airline & Steamship Clerks v. Pan American World Airways, Inc.*, 404 F.2d 938 (2d Cir. 1969).

■ However, the law yields exceptions to its most steadfast rules. While the prohibition against judicial intervention in representation disputes is "substantially total,"[8] review may be allowed (1) to neutralize an order of the Board made in excess of its delegated powers and contrary to a specific prohibition of the Act; or (2) to compel performance by the Board of its statutorily mandated duties.[9] See *Railway Clerks*, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133;

---

6. Section 2 Ninth provides in pertinent part:
 If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter. In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier. In the conduct of any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election, or may appoint a committee of three neutral persons who after

hearing shall within ten days designate the employees who may participate in the election.
 45 U.S.C.A. § 152 Ninth.

7. *Gen. Comm. v. Missouri-K.-T. R. Co.*, 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943) and *Gen. Comm. v. South Pacific Co.*, 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85 (1943).

8. *Local 732, Int'l Bhd. of Teamsters v. NMB*, 438 F.Supp. 1357, 1363 (S.D.N.Y.1977) ("*Local 732*").

9. For cases discussing circumstances under which judicial intervention may be allowed under the RLA, see *Air Line Pilots Ass'n, Int'l*, 656 F.2d at 20–22; *Ruby v. American Airlines, Inc.*, 323 F.2d 248, 254–55 (2d Cir. 1963), *cert. denied*, 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1964); and *Aircraft Mechanics Fraternal Ass'n v. United Airlines*, 406 F.Supp. 492, 500–01 (N.D.Cal.1976).
 As a technical matter, the situations under which jurisdiction may be exercised are not "exceptions" to the bar against direct review of NMB decisions, but narrowly drawn "authorizations" to set aside Board orders or to compel Board actions. See *Railway Clerks*, 380 U.S. at 660, 85 S.Ct. at 1197; *Local 732*, 438 F.Supp. at 1363.

*WES Chapter Flight Engineers' International Association, AFL–CIO v. NMB*, 314 F.2d 234, 236 (D.C.Cir.1962); *Aircraft Mechanics Fraternal Association v. United Airlines, Inc.*, 406 F.Supp. 492, 500 (N.D.Cal. 1976).

■ The Board's statutory duty to investigate representation disputes is judicially enforceable, although the scope of judicial inquiry is exceedingly narrow: Board action is reviewable only to the extent that it bears on the question of whether the Board performed its statutory mandate. *Railway Clerks*, 380 U.S. at 661, 85 S.Ct. at 1198. Thus, once a court determines that the Board has met its statutory obligation to investigate the dispute, the court lacks authority to inquire further into the kind, quality, or results of such investigation. *International In-Flight Catering Co., Ltd. v. NMB*, 555 F.2d 712, 717 (9th Cir. 1977); *Hawaiian Air Lines, Inc. v. NMB*, 659 F.2d 1088 (D.Haw.1981), aff'd 107 LRRM 3352 (9th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 1978, 72 L.Ed.2d 445 (1982); *see Sedalia-Marshall-Boonville Stage Line, Inc. v. NMB*, 574 F.2d 394, 398 (8th Cir.), *cert. denied*, 439 U.S. 881, 99 S.Ct. 218, 58 L.Ed.2d 193 (1978); *Ruby v. American Airlines, Inc.*, 323 F.2d 248, 255 (2d Cir. 1963), *cert. denied*, 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1964). Otherwise stated, the duty to investigate is a mandate "to make such investigation as the nature of the case requires," and the Board has considerable discretion in selecting the methods and procedures that are employed in each case. *Railway Clerks*, 380 U.S. at 662 & n.3, 85 S.Ct. at 1198 n.3; *Sedalia-Marshall-Boonville Stage Line*, 574 F.2d at 397–98; *Local 732, International Brotherhood of Team-*

*sters v. NMB*, 438 F.Supp. 1357, 1364 (S.D. N.Y.1977).

■ The threshold question before this court is whether there exists a "dispute" within the meaning of § 2 Ninth. *Summit Airlines, Inc. v. Teamsters Local Union No. 295*, 628 F.2d 787, 793 (2d Cir. 1980).[10] Rowland K. Quinn, Jr., the Executive Secretary of the Board, avers by declaration that, in his application, Mr. Farquharson asserted that a dispute had arisen among the mechanics of the Railroad concerning their representation. Since the "dispute" requirement is satisfied even when only one union seeks certification,[11] it may be presumed that a "dispute" arises where an incumbent representative is challenged by an individual or entity seeking certification, as in the case at bar.[12]

■ It also appears that filing an application constitutes a request to investigate the dispute. *See* 29 C.F.R. § 1203.2 (1981). We therefore conclude that a "party"[13] to a representation dispute requested an investigation within the meaning of § 2 Ninth of the RLA.

The Railroad contends that this matter is subject to review on the ground that an investigation was initiated but never completed by the Board. The Railroad charges that the investigation was suspended as a result of the Board's unlawful insistence that the applicant comply with filing requirements set forth in the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 401 *et seq.* Furthermore, the Railroad asserts, even were the filing requirements valid, they could not properly be imposed since the Board has violated a provision of the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et*

---

10. As earlier noted, the statute provides in pertinent part: "*If any dispute shall arise* among a carrier's employees as to who are the representatives of such employees . . . *it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate* such dispute . . ." 45 U.S.C. § 152 Ninth (emphasis added).

11. *Air Line Pilots Ass'n, Int'l*, 656 F.2d at 24; *Summit Airlines*, 628 F.2d at 793.

12. While we do not view the point as controlling, we also note that, in its correspondence, the Board refers to the matter as a "dispute." Declaration of Rowland K. Quinn, Jr., Exhibits 1 & 2 (File Exh. 6).

13. The status of a "party" is accorded those organizations and individuals who seek to represent the employees. *Railway Clerks*, 380 U.S. at 666–67, 85 S.Ct. at 1200–01. See discussion, *infra*.

*seq.*, by following an unpublished rule of procedure; *see* 5 U.S.C. § 552(a)(1)(B).

The Board concedes that the investigation was terminated as a result of the applicant's refusal to comply with the reporting requirements of the LMRDA.[14] However, the Executive Secretary of the Board declares that the reporting requirement was imposed in accordance with its policy in handling representation applications from individual carrier employees,[15] a policy designed to assure the Board that the individual is a bona fide applicant and that his selection as a representative would be without carrier interference, influence, or coercion, in harmony with the purposes of the RLA.[16] The Board notes that the applicant was given notice of, and ample opportunity to comply with, the LMRDA requirements, and that he neither complied with nor responded to such notice.

■ We must reject plaintiff's argument regarding the rule publication provision of the APA, 5 U.S.C. § 552(a)(1)(B). Section 552(a)(1)(B) requires that agency "statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and infor-

mal procedures available" be published in the Federal Register. However, section 552(a)(1) states that *"[e]xcept to the extent that a person has actual and timely notice of the terms thereof*, a person may not in any manner . . . be adversely affected by a matter required to be published in the Federal Register and not so published." [Emphasis added]. The uncontroverted facts establish that the applicant, Mr. Farquharson, was notified of the Board's policy and given adequate opportunity during which to comply or object. Therefore, even if this court has jurisdiction to review the APA claim,[17] no violation of section 552(a)(1) has been established,[18] as this case comes within an exception to the publication rule.

We next address the propriety of the dismissal of the application for failure to comply with the LMRDA reporting requirements.

It is the Board's uncontroverted assertion that the LMRDA requirement is routinely imposed so as to insure that applicants are bona fide and that representatives are free of carrier interference, influence, or coercion. If the Board procedure is a reasonable means by which to facilitate the stated end, it comports with the commands of the

---

14. *See* defendant's Memorandum in Support of Motion to Dismiss or Summary Judgment at 9.

15. According to Mr. Quinn, the policy is also applied to unions and other employee groups which the Board is not certain are bona fide labor organizations eligible to serve as employee representatives. Declaration of Rowland K. Quinn, Jr., ¶ 7 (File Exh. 6).

16. *Id.*, ¶¶ 6, 7.
The Board posits that close scrutiny of this applicant was particularly appropriate in that he was employed by the Railroad in a supervisory capacity and listed his only return address as that of the Railroad. Defendant's Memo in Support of Motion to Dismiss or Summary Judgment at 12 (at asterisk). However, the Railroad objects to the Board's implication that the applicant was not bona fide on the ground that the issue is being raised for the first time in this proceeding and was not reached by the Board in conjunction with its dismissal of the application. Plaintiff's Memo in Opposition to Defendant's Motion to Dismiss at 2.

17. Plaintiff evidently argues that the APA provides a jurisdictional basis for this action, reasoning that the Board's policy of requiring

LMRDA filings was not published and otherwise exceeds the Board's authority. Plaintiff's Memo in Opposition to Defendant's Motion to Dismiss at 14–17. However, this court cannot "bootstrap" jurisdiction by means of the APA, regardless of the merits of the APA claim, since the judicial review provisions of that statute are expressly inapplicable to cases in which "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. §§ 701(a)(1), (2). The Supreme Court has expressly held that § 10 of the APA, 5 U.S.C. §§ 701–704, does not constitute an implied, independent grant of subject matter jurisdiction permitting federal judicial review of agency action. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

18. *See generally Yassini v. Crosland*, 618 F.2d 1356, 1361–62 (9th Cir. 1980); *Giles Lowery Stockyards, Inc. v. Dep't of Agriculture*, 565 F.2d 321, 326 (5th Cir. 1977), *cert. denied*, 436 U.S. 957, 98 S.Ct. 3070, 57 L.Ed.2d 1122 (1978); *Whelan v. Brinegar*, 538 F.2d 924, 927 (2d Cir. 1976).

statute [19] and is consonant with the reason for which Congress enacted the statute.[20]

With one exception, § 2 Ninth of the RLA invests the Board with no special means or powers whereby information can be obtained in the investigation of an employee representation dispute.[21] *See United States v. Feaster*, 376 F.2d 147, 149 (5th Cir.), *cert. denied*, 389 U.S. 920, 88 S.Ct. 237, 19 L.Ed.2d 265 (1967). The Board is simply "authorized ... to utilize any ... appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by employees without interference, influence, or coercion exercised by the carrier." 45 U.S.C. § 152 Ninth.

In view of the wide discretion accorded the Board in the conduct of investigations, this court is reluctant to conclude that the Board may not impose as a means of developing information and as a condition of qualification for representation compliance with LMRDA reporting requirements. The case law establishes that the courts cannot review the procedure, substance, or outcome of Board investigations.[22] Accordingly, judicial interference in the means by which investigations are conducted is precluded, and direct or indirect challenges to the outcome of an investigation cannot be entertained in federal court.

Furthermore, the jurisdictional bar may be lifted only in "instances of constitutional dimension or gross violation of the statute," [23] or cases wherein the Board's action is " 'so plainly beyond the bounds of the Act, or ... so clearly in defiance of it, as to warrant the immediate intervention of an equity court.' " [24] Even assuming that the Board's policy of requiring compliance with LMRDA requirements is an abuse of discretion, the impropriety cannot be said to rise to a Constitutional level or to comprise a gross violation of the statute.[25]

It was "to avoid the haggling and delays of litigation" [26] that questions regarding representation disputes were assigned to the Board, and "[t]here [is] to be no dragging out of the controversy into other tribunals of law." *Switchmen's Union*, 320 U.S. at 305, 64 S.Ct. at 99. In the opinion of this court, an investigation was undertaken by the Board, the result of which was dismissal of the application rather than certification by means of an election. Therefore, we hold that this court has no subject matter jurisdiction over the case at bar.

**19.** *See* 45 U.S.C. §§ 151a(3), 152 Third, 152 Fourth, and 152 Ninth.

**20.** For discussion of the policies underlying the statute, see *Gen. Comm. of Adjustment*, 320 U.S. at 336, 64 S.Ct. at 152; *Virginian Ry. Co. v. System Fed'n No. 40*, 300 U.S. 515, 547–49, 57 S.Ct. 592, 599–600, 81 L.Ed. 789 (1936); *Aircraft Mechanics Fraternal Ass'n*, 406 F.Supp. at 495–498.

**21.** The statute does provide that "[t]he Board shall have access to and have powers to make copies of the books and records of the carriers to obtain and utilize such information as may be deemed necessary by it to carry out the purposes and provisions of this paragraph." 45 U.S.C. § 152 Ninth.

**22.** *See* discussion, *supra.*

**23.** *Int'l Bhd. of Teamsters v. Bhd. of Ry., Airline & S.S. Clerks*, 402 F.2d 196, 205 (D.C.Cir.), *cert. denied*, 393 U.S. 848, 89 S.Ct. 135, 21 L.Ed.2d 119 (1968); *Air Canada v. NMB*, 478 F.Supp. 615, 616 (S.D.N.Y.1979); *Local 732*, 438 F.Supp. at 1363.

**24.** *Int'l Bhd. of Teamsters*, 402 F.2d at 205 (quoting *Loc. 130, Int'l Union of Elec., Radio & Machine Workers v. McCulloch*, 345 F.2d 90, 95 (D.C.Cir.1965)).

**25.** The issue is one of first impression in this Circuit and, indeed, we are cognizant of only one case on point. In *Air Florida, Inc. v. NMB*, 534 F.Supp. 1 (S.D.Fla.1982), *appeal docketed*, No. 82–5330 (11th Cir. March 15, 1982), the court *inter alia* held that it was without jurisdiction to review the Board's refusal to certify an applicant because of the applicant's failure to file disclosure statements required by the LMRDA. The court reasoned that the Board has broad discretion in determining the method and procedures to be used in investigating representation disputes, and its course of action did not constitute a gross violation of the RLA warranting judicial intrusion.

**26.** *Ry. Clerks*, 380 U.S. at 671, 85 S.Ct. at 1203.

Our holding renders it unnecessary to resolve the issue of standing also raised by defendant in support of its motion. We will, however, address the standing question as an alternative ground for dismissal.

### III. *Standing*

The term "standing" encompasses a "blend of constitutional requirements and prudential considerations," the exact nature of which, the Supreme Court concedes, has been ambiguous. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* —— U.S. ——, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) ("*Valley Forge*"); *see also Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). However, two overall concepts subsume the key elements of standing: "injury in fact" and "zone of interests." [27]

 A litigant who invokes the court's authority must demonstrate that he has suffered some actual or threatened injury [28] resulting from the challenged action, harm which is likely to be redressed by a favorable decision. *See Valley Forge,* 102 S.Ct. at 758. Related to this aspect of justiciability is the notion that a plaintiff must allege such a personal stake in the outcome of the controversy as to warrant the invocation of federal jurisdiction and the exercise of the court's remedial powers. *Warth,* 422 U.S. at 498–99, 95 S.Ct. at 2204–05.

The law also requires that a plaintiff's cause fall within the "zone of interests" to be protected or regulated by the statute in question. *Valley Forge,* 102 S.Ct. at 760, (citing *Data Processing Service v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1969)). Thus, even where a plaintiff alleges injury sufficient to satisfy the "case or controversy" requirement, he "generally must assert his own legal rights and interests and cannot rest his claim on the legal rights or interests of third parties." *Valley Forge,* 102 S.Ct. at 759–60 (quoting *Warth v. Seldin,* 422 U.S. at 499, 95 S.Ct. at 2205).[29]

 We must first determine whether plaintiff has alleged harm sufficient to meet the requirement of "injury in fact." Plaintiff contends that the following injuries result from defendant's failure to complete an investigation and conduct an election: (1) the Railroad is presently uncertain whether it has a duty to "treat with" any representative of its mechanics and, if so, with whom it must "treat"; (2) settlement of other litigation has been impeded; (3) the continuing existence of the unresolved representation dispute hampers its ability to bargain collectively regarding conditions of employment in accordance with 45 U.S.C. § 156, since the Act prohibits a carrier from treating any organization as its employees' bargaining representative unless that organization is certified; and (4) the failure of defendant to resolve the representation dispute frustrates the general purposes of the RLA.[30]

This court has before it no indication that there in fact exists a continuing "representation dispute" attributable to the Board's

---

**27.** The Supreme Court has implied that the "injury in fact" requirement is associated with the "case or controversy" mandate of Art. III of the Constitution, whereas the "zone of interests" theory relates to "prudential principles." *See Valley Forge,* 102 S.Ct. at 759–60.

**28.** With regard to "threatened injury," it is important to note that the standing issue "bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention..." *Warth,* 422 U.S. at 499 n.10, 95 S.Ct. at 2205 n.10.

**29.** The source of the plaintiff's claim for relief may vitally influence resolution of the standing question. In such circumstances, the court must determine whether the Constitutional or statutory provision upon which plaintiff relies may be read to accord persons in plaintiff's position a judicial remedy. The rule that generally prohibits a plaintiff from asserting the rights of third parties will yield when the court concludes that countervailing policies must prevail. In such cases, the court effectively determines that the Constitutional or statutory provision at issue *implies* a right of action in favor of plaintiff. *See Warth,* 422 U.S. at 500–01, 95 S.Ct. at 2205–06.

**30.** Plaintiff's Complaint, ¶¶ 7–10.

disposition of the Farquharson application rendering it improvident for the Railroad to conduct itself otherwise than it would in the ordinary course of business. This is not a situation in which two unions are actively vying for the right to represent the Railroad mechanics: the would-be representative has been all but invisible since the filing of the initial application. Moreover, as the Board has dismissed the application, a "dispute" is no longer pending, a situation which distinguishes this case from those in which a carrier seeks judicial relief from pressure to bargain in circumstances under which it runs a substantial risk of incurring statutory sanctions.[31] Accordingly, the case at bar must be differentiated from those in which a bona fide dispute exists as to the identity of the true representative, the nature of which places the carrier "between a rock and a hard place." [32]

■■■ We therefore conclude that plaintiff has demonstrated no actual or threatened injury which has arisen or is imminent as a result of defendant's conduct. Nor can standing be predicated upon the allegation that the controversy has impeded settlement of other litigation because, even if plaintiff were to prevail in the matter at bar, the effect of the relief requested upon the other litigation is highly speculative. Finally, standing may not be based upon the contention that defendant's conduct frustrates the general purposes of the RLA: a plaintiff "must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, (1979) (emphasis added) (citations omitted).

■■■ We also conclude that plaintiff's cause falls outside the "zone of interests" protected or regulated by § 2 Ninth of the RLA. Nowhere in the statute is a carrier expressly accorded the right to prosecute a claim of this nature and, for reasons stated below, § 2 Ninth cannot be held to imply such a right in favor of plaintiff.[33]

The major objective of the RLA was " 'the avoidance of industrial strife, by conference between the authorized representatives of employer and employee.' " Railway Clerks, 380 U.S. at 658, 85 S.Ct. at 1196 (quoting Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 547, 57 S.Ct. 592, 599, 81 L.Ed. 789 (1937)). The procedures adopted by the statute were thus designed to expedite the resolution of management-labor disputes and to facilitate the orderly operation of interstate commerce. See 45 U.S.C. § 151a; see generally Union Pacific Railroad Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959); Virginian Railway, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

■■■ Section 2 Ninth, however, was enacted by Congress to help free unions from the influence, coercion and control of carri-

---

**31.** See Pan Am World Airways, Inc., 275 F.Supp. 986, aff'd per curiam 404 F.2d 938. Compare Aircraft Mechanics Fraternal Ass'n, 406 F.Supp. 492.

**32.** Aircraft Mechanics Fraternal Ass'n, 406 F.Supp. at 503.

**33.** The "preferred approach" for determining whether an implied private right of action exists is application of the four factors outlined in Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975). Davis v. United Airlines, Inc., 662 F.2d 120, 122 (2d Cir. 1981) (app. pending); Bentley v. Johnson Controls, Inc., No. 80–310, slip op. at 4 (D.Vt. Feb. 26, 1982). Decisions issued subsequent to Cort have explained that the key to the inquiry is the intent of the legislature, Middlesex City Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981); however, the four factors specified in Cort remain " 'criteria through which this intent could be discerned.' " Calif. v. Sierra Club, 451 U.S. 287, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981) (quoting Davis v. Passman, 442 U.S. 228, 241, 99 S.Ct. 2264, 2275, 60 L.Ed.2d 846 (1975) and Transamerican Mortgage Advisors v. Lewis, 444 U.S. 11, 27, 100 S.Ct. 242, 251, 62 L.Ed.2d 146 (1979)). Accordingly, our analysis is influenced by Cort and considers (1) whether plaintiff is a member of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent to create or deny such a remedy; (3) whether the implication of a remedy is consistent with the underlying purposes of the statutory scheme; and (4) whether the remedy is in the federal domain of interest. Cort, 422 U.S. at 78, 95 S.Ct. at 2087–88.

ers and to aid in the resolution of jurisdictional disputes between unions or groups of employees. 45 U.S.C. § 152 Ninth; *General Committee v. Missouri-K.-T. Railroad Co.,* 320 U.S. 323, 336, 64 S.Ct. 146, 152, 88 L.Ed. 76 (1943); *Switchmen's Union,* 320 U.S. at 302, 64 S.Ct. at 97–98; *Virginian Railway Co.,* 300 U.S. at 545–47, 57 S.Ct. at 598–99. Thus, the status of a "party" to a representation dispute before the Board is accorded only those organizations and individuals who seek to represent the employees, as it is the employees' representative that is to be chosen, not the carrier's. *Railway Clerks,* 380 U.S. at 666–67, 85 S.Ct. at 1200–01. Otherwise stated, the carrier does not have a "side" in a representation dispute, and therefore cannot invoke the services of the Board. *Summit Airlines,* 628 F.2d at 793.

In sum, § 2 Ninth was enacted to serve the interests of employees and their true representatives; Congress expressly intended to "insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier." It would be manifestly inconsistent with the purposes of the provision to countenance by means of judicial process employer intervention in representation disputes. Accordingly, this court cannot recognize in the plaintiff-carrier standing to seek further investigation of a particular applicant or to challenge the results of an investigation by the Board.

We therefore grant the defendant's motion for summary judgment on the ground that this court lacks jurisdiction over the subject matter and on the additional ground that plaintiff lacks standing to prosecute the claim.[34]

SO ORDERED.

**34.** In so ruling, we do not purport to address the issue raised in *Int'l In-Flight Catering Co., Ltd. v. NMB,* 555 F.2d 712 (9th Cir. 1977), upon which plaintiff relies. In *International In-Flight,* the carrier alleged that the Board had improperly and unlawfully certified a representative by following a selection procedure which conflicted with its own rules. Where the Board *certifies* a representative in a manner in conflict with express statutory and regulatory provisions, judicial review may be appropriate. That issue is not before us, and we conclude that the Ninth Circuit case is distinguishable on its facts.