**WES CHAPTER, FLIGHT ENGINEERS'
INTERNATIONAL ASSOCIATION,
AFL–CIO, Appellant,**

v.

**NATIONAL MEDIATION BOARD et al.,
Appellees.**

No. 16697.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 5, 1962.

Decided Nov. 15, 1962.

Mr. Isaac N. Groner, Washington, D. C., with whom Messrs. I. J. Gromfine, Washington, D. C., Herman Sternstein, New York City, and William B. Peer, Washington, D. C., were on the brief, for appellant.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., for appellee National Mediation Board and certain other appellees. Mr.

David C. Acheson, U. S. Atty., and Messrs. Nathan J. Paulson and Harold D. Rhynedance, Jr., Asst. U. S. Attys., at the time the brief was filed, were on the brief for appellee National Mediation Board and certain other appellees.

Mr. Tim L. Bornstein, Washington, D. C., for appellee Second Officers' Association.

Mr. Donald K. Hall, Los Angeles, Cal., of the bar of the Supreme Court of California, pro hac vice, by special leave of court, with whom Messrs. L. Welch Pogue, Washington, D. C., and Hugh W. Darling, Los Angeles, Cal., were on the brief, for appellee, Western Air Lines, Inc. Messrs. Calvin Davison and Robert H. Shorb, Washington, D. C., also entered appearances for appellee Western Air Lines, Inc.

Before FAHY, BASTIAN and BURGER, Circuit Judges.

FAHY, Circuit Judge.

The action in the District Court was to obtain a decree vacating orders, rulings, and the direction of an election made by the National Mediation Board, and for a declaratory judgment and injunctive relief. The plaintiff, now appellant, is WES Chapter, Flight Engineers International Association, AFL-CIO, hereinafter referred to as "the Association" or "the Union". The District Court dismissed the action for failure to state a claim upon which relief could be granted. The court also granted the Board's cross motion for summary judgment.

The Board proceedings under attack were held pursuant to Section 2, Ninth, of the Railway Labor Act, 48 Stat. 1186 (1934), 45 U.S.C.A. § 152 (Supp.1961), providing that "[i]f any dispute shall arise among a carrier's employees as to who are the representatives of such employees", the Board shall investigate the dispute, conduct a secret ballot and then certify who or what organization is to represent the employees of the carrier. And "[i]n the conduct of any election * * * the Board shall designate who may participate in the election and establish the rules to govern the election * * *."

A certifying election was held by the Board with the result that the Second Officers' Association, to which we shall refer as SOA, replaced the Association as the designated representative of the flight engineers of Western Airlines, the employer. The Board excluded from the voting flight engineers who were members of the Association. The first contention of the Association is that such exclusion violated the Board's own Rule 6.[1]

The second claim is that the Board deprived appellant of due process of law by not investigating fully the charge that SOA was dominated and assisted by the employer.

On the claim of eligibility the following are the essential facts. One hundred twenty three flight engineers, then represented by the Association, walked off their jobs at Western in February 1961, as part of a general walkout of flight engineers at a number of air lines, growing out of a dispute at United Air Lines.[2] The day after the walkout the men in effect were ordered by the United States District Court for the

---

1. This rule reads as follows:
   "Dismissed employees whose request for reinstatement account of wrongful dismissal are pending before proper authorities, which includes the National Railroad Adjustment Board or other appropriate adjustment board, are eligible to participate in elections among the craft or class of employees in which they are employed at the time of dismissal. This does not include dismissed employees whose guilt has been determined, and who are seeking reinstatement on a leniency basis."

2. The Association states that the walkout occurred because of, or as a protest against, a Board decision adverse to another chapter of the same union, upheld by this court in UNA Chapter, Flight Engineers' Int'l Ass'n, AFL-CIO v. National Mediation Board, 111 U.S.App.D.C. 121, 294 F.2d 905 (1961), cert. denied, 368 U.S. 956, 82 S.Ct. 394, 7 L.Ed.2d 388 (1962).

Southern District of California to return to work and failed to do so. Upon their refusal to accept normal work assignments Western terminated the employment of the 123, obtained replacements in large part and refused to take back those who had declined the work assignments. Nine of these unsuccessfully appealed under the procedures of the collective bargaining agreements between Western and the Association. Six of the nine then unsuccessfully appealed to the Vice President-Operations of Western. The other three did not file second appeals and are claimed by Western to have abandoned their cases. Western also claims that none appealed to the System Board of Adjustment in accordance with another agreement between the Association and Western, and that Western's action in terminating the employment of the 123 flight engineers became final on or about May 19, 1961, under the terms of the collective bargaining agreement. In the meanwhile, when the walkout ended on the other air lines a few days after it began, a Presidential Commission was set up to consider the issues involved, and a back-to-work agreement was reached, which, however, Western did not accept. This agreement pledged the air lines which did accept it to take no disciplinary action against the flight engineers. Those represented by the Association promptly offered to return to work, but Western would not take them back. In April, following the February walkout and the replacements at Western, SOA claimed to represent the flight engineers employed by Western. It initiated the Board proceedings under section 2, Ninth, and it was in the ensuing election that the flight engineers for whom the Association speaks were not permitted to vote.

The need for a large degree of conclusiveness in the settlement of labor disputes over the question of employee representation in the transportation industry was met by Congress in the Railway Labor Act. Responsibility was given to a board with special competence, in the effort to maintain enough harmony to prevent interruption of service. Congress sought to preclude litigation in the courts over what the Supreme Court has called an "explosive problem." Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 303, 64 S.Ct. 95, 98, 88 L.Ed. 61 (1943). The Court said Congress had taken "great pains" to protect the Mediation Board in its handling of the problem. Consequently the courts have seldom intruded. Switchmen's Union has been followed in a line of cases which include our recent decisions in UNA Chapter, etc. v. National Mediation Board, supra, and Air Line Stewards and Stewardesses Ass'n v. National Mediation Board, 111 U.S.App.D.C. 126, 294 F.2d 910 (1961), cert. denied, 369 U.S. 810, 82 S.Ct. 687, 7 L.Ed.2d 611 (1962). And see Air Line Dispatchers Ass'n v. National Mediation Board, 89 U.S.App.D.C. 24, 189 F.2d 685 (1951).

■ Where courts have taken jurisdiction of such representation disputes the context has strongly indicated either that the Board by refusing to act had obliterated rights granted to employees by Congress[3] or, turning now to a situation arising under the National Labor Relations Act, the Board had acted in excess of its delegated powers and contrary to a statutory provision which is "clear and mandatory." Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). When this occurs the courts "cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers." Id. at 190, 79 S.Ct. at 185.

■ Viewed against this background the two questions raised by appellant do not enable the courts to assume jurisdiction. As to eligibility, it is clear the Board made a determination that the excluded engineers were not eligible under Rule 6 to vote in the certifying election. The Board has not refused to

3. Air Line Dispatchers Ass'n v. National Mediation Board, supra.

act on the one hand, nor has it exceeded the express commands of Congress on the other. In the face of strong Association challenge on this point it might have been preferable for the Board to have delineated more fully its determination—making clear whether, for example, the excluded men were "dismissed" within the meaning of Rule 6 or had merely quit;[4] and whether if dismissed their reinstatement applications were pending before "proper authorities."[5] However that may be, the challenge by appellant does not go beyond asking for a different solution to a mixed factual and legal issue which has been solved by the Board in a manner not clearly contrary to its statutory, including its rule-making, authority. Switchmen's Union and related cases cited above; cf. Order of Ry. Conductors of America v. Penn. R. R., 323 U.S. 166, 65 S.Ct. 222, 89 L.Ed. 154 (1944), where in the face of allegations of "illegal" action on part of the Board but with the absence of the Board from the case the Court failed to reach the question of the propriety of judicial relief.

■ The second question must be decided in a similar manner. The Association charged that SOA was assisted and dominated by the employer in violation of section 2, Third and Fourth, of the Act. The Board held a hearing on these charges, taking pertinent testimony but declining, because of lack of power, to compel attendance of certain witnesses requested by the Association.[6] The statute, in Section 2, Ninth, requires an "investigation" of such disputes; and the Board, it seems to us, did investigate. In a different case, where, for example, a stronger showing is made initially by the charging party than was made here,[7] the Board might be required to make a more independent investigation into a charge of company assistance to an opposing union seeking certification. But in discharging its duty to investigate in the manner it did in this case we find no official conduct in excess of authority and no refusal to bring the processes of the Board to bear in a reasonable manner on the dispute. Accordingly we do not think the District Court acquired jurisdiction to upset the Board's ruling that the Association's charges were without merit.[8]

■■ It remains only to be said that in our view the Board's scope of authority under the statute, and its exercise, preclude a successful challenge that the Association's constitutional rights were violated. "[T]he requirements of due process * * * vary with the type of proceeding involved." Hannah v. Larche, 363 U.S. 420, 440, 80 S.Ct. 1502, 1513, 4 L.Ed.2d 1307 (1959). And "when gov-

4. Judge Hall of the United States District Court for the Southern District of California in Flight Engineers' International Association v. Western Air Lines, Inc., Civil Action No. 362-61 PH, stated in his oral opinion that the flight engineers had "simply quit their jobs."

5. The Board itself states that at the time of the proceedings before it, which began April 5, 1961, no "valid" appeal for reinstatement was pending before any official of Western or before the System Board of Adjustment. But the Association claims it then had a counterclaim pending in the District Court in California, demanding restoration and reinstatement, a claim for reinstatement before the System Board of Adjustment, and a similar claim before the Presidential Commission.

6. "While the Mediation Board is given specified powers in the conduct of elections, there is no requirement as to hearings. And there is no express grant of subpoena power." Switchmen's Union, supra, 320 U.S. at 304, 64 S.Ct. at 98.

7. The Board found "no fact was established from which even an inference—to say nothing of a conclusion—can be drawn" supporting the charges.

8. The charges of employer assistance were made on "information and belief" and were only general in nature. At the hearing the original charges were not made more specific or detailed. Furthermore, representatives of both SOA and the employer were present at the hearing, which was held by one member of the Board. The full Board reviewed the transcript of the hearing and examined copies of SOA's minutes.

ernmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used." Id. at 442, 80 S.Ct. at 1515. Due process of law would not appear to require more in the circumstances than was accorded appellant.

The order of the District Court dismissing the complaint is

Affirmed.