574 F.2d 394
 97 L.R.R.M. (BNA) 3224, 83 Lab.Cas. P 10,481
 SEDALIA-MARSHALL-BOONVILLE STAGE LINE, INC., Appellant,
v.
NATIONAL MEDIATION BOARD, Appellee,
and
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, Appellee.
 No. 77-1606.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 11, 1978.
Decided March 29, 1978.
 
 John R. Phillips (argued), James R. Swanger and Kathleen A. Reimer, Des Moines, Iowa, on brief, for appellant.
 Allan Gerson (argued), Atty., Civ. Div., App. Sec., Dept. of Justice, Washington, D.C., Barbara Allen Babcock, Asst. Atty. Gen., and Ronald R. Glancz, Atty., Washington, D.C., and Roxanne Barton Conlin, U. S. Atty., Des Moines, Iowa, on brief, for National Mediation Board.
 Roland P. Wilder, Jr. (argued), Robert M. Baptiste, Gary S. Witlen, Washington, D.C., and Robert E. Conley, Des Moines, Iowa, on brief, for International Brotherhood of Teamsters.
 Before GIBSON, Chief Judge, VAN OOSTERHOUT, Senior Circuit Judge, and ROSS, Circuit Judge.
 ROSS, Circuit Judge.
 
 
 1
 Sedalia-Marshall-Boonville Stage Line, Inc. (hereinafter SMB), an air carrier, appeals from an adverse decision of the district court dismissing its complaint on a summary judgment motion, Fed.R.Civ.P. 56. The case arose under the Railway Labor Act, 45 U.S.C. §§ 151 et seq., wherein SMB challenged the decision of the National Mediation Board, a government agency, to certify the International Brotherhood of Teamsters as the bargaining representative of SMB's employees.
 
 
 2
 In January 1976 the Teamsters filed an application with the Board seeking to become the labor representative of SMB's pilots and co-pilots. In a subsequent election in March 1976 the Teamsters, according to the Board, won the right to represent these employees, with the union receiving 30 votes among the 58 eligible voters.[1]
 
 
 3
 In general terms, SMB has disagreed with the Board on who was eligible to vote in the representation election. By telegram to the Board on April 6, 1976, SMB protested the election results, contending that eligible employees had not been permitted to vote and that an ineligible former employee had voted; further SMB complained that these decisions were made without notice to the employer or an opportunity for the employer to be heard.
 
 
 4
 Specifically, SMB alleged that no investigation had been made by the Board as to the eligibility status of four named employees, and that no notice was given to SMB of a possible dispute concerning these employees' eligibility. After a summary rejection by the Board of the employer's complaints on April 7, 1976, and a renewal of the complaint by SMB in the form of an "Application to Vacate Certification and for Formal Evidentiary Hearing," the Board responded on May 7, 1976, with a letter from its Executive Secretary. The letter related the outcome of an executive session of the Board which reaffirmed that the excluded employees had been "correctly excluded" from voting; however, the Board admitted that one individual declared eligible by it, Shaw, should have been ineligible as SMB had alleged. The Board concluded that the error was harmless, however, since Shaw had not voted in the election anyway.[2] In the May 7 letter the Board also briefly gave a reason for excluding each of the four named individuals whom SMB had complained were erroneously declared ineligible.
 
 
 5
 As a legal matter, SMB's petition in the district court alleged that, based on the foregoing set of facts, the Board had: (1) failed to comply with § 152, Ninth of the Act by failing to investigate a representational dispute and issues of employee voting eligibility; (2) designated an organization as the employee representative which had not been lawfully authorized by a majority of a craft or class of employees in violation of § 152, Fourth of the Act; (3) denied SMB minimal due process rights under the fifth amendment.
 
 
 6
 The statute with which this case is primarily concerned is § 152, Ninth of the Railway Labor Act, which sets out the duties of the National Mediation Board when a contest over employee representation arises:
 
 Section 152, Ninth:
 
 7
 Disputes as to identity of representatives; designation by Mediation Board; secret elections
 
 
 8
 Ninth. If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter. In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier. In the conduct of any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election, or may appoint a committee of three neutral persons who after hearing shall within ten days designate the employees who may participate in the election. The Board shall have access to and have power to make copies of the books and records of the carriers to obtain and utilize such information as may be deemed necessary by it to carry out the purposes and provisions of this paragraph. (Emphasis added.)
 
 
 9
 The district court concluded that its jurisdiction to review employee representation proceedings under the Act was limited to "instances of constitutional dimension or gross violation of the statute," further concluded that no such violation of the statutory duty to "investigate" a representation dispute was present in this case, and granted defendant's summary judgment motion. The employer, SMB, appealed this holding, the holding that the employer had no procedural due process rights in the Board's eligibility determinations, and the granting of a protective order which had stayed discovery against the Board.
 
 
 10
 We affirm though we share the same concerns expressed by Judge Stuart in his opinion.[3]
 
 
 11
 The appellant's request that we invalidate the certification is based on two assertions of error: that the Board had failed to undertake an investigation to determine the eligible electorate, and that the Board had failed to include the employer as a participant in the Board's processes for defining the electorate. On the basis of Brotherhood of Railway & Steamship Clerks v. Association For the Benefit of Non-Contract Employees, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965) (hereinafter Railway Clerks ) and other Supreme Court authority, we do not agree that the district court erred.
 
 
 12
 In Railway Clerks, supra, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133, the Supreme Court set out the principles for evaluating a claim that a decision of the National Mediation Board was subject to judicial review. It is first clear that the Court considered judicial review to be sparing. Citing its earlier opinion, Switchmen's Union v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943),[4] the Court in Railway Clerks, supra, 380 U.S. at 659, 85 S.Ct. 1192, first stated that § 152, Fourth of the Railway Labor Act had written into law the "right" of the majority of a class or craft of employees to choose who shall be their representative for purposes of the Act. Congress had determined to protect that "right" in § 152, Ninth of the Act which gave the Mediation Board the "power to resolve controversies" concerning representation. Id. The power to protect the employees' rights thus resided in the Board, not in the judiciary:
 
 
 13
 Congress decided on the method which might be employed to protect this "right"; and that where Congress "has not expressly authorized judicial review," id., (320 U.S.) at 301, 64 S.Ct. at 97, "this Court has often refused to furnish one even where questions of law might be involved," id., at 303, (64 S.Ct. at 98). The Court's conclusion was that "the intent seems plain the dispute was to reach its last terminal point when the administrative finding was made. There was to be no dragging out of the controversy into other tribunals of law."
 
 
 14
 Railway Clerks, supra, 380 U.S. at 659, 85 S.Ct. at 1197.
 
 
 15
 To these general principles of judicial nonreview, the Court added one limitation: judicial power may be exerted to require the Board to exercise a duty imposed under § 152, Ninth of the Act. Railway Clerks, supra, 380 U.S. at 661, 85 S.Ct. at 1198. "(T)he Board's action here is reviewable only to the extent that it bears on the question of whether it performed its statutory duty to 'investigate' the dispute." Id. (footnote omitted).
 
 
 16
 After a review of applicable "principles," the Court in Railway Clerks proceeded to consider, and reject, the employer's assertion that the Board had failed to perform its statutory duty to investigate in making a class and craft designation for the employees; the employer had argued that the Board had made an arbitrary determination without taking evidence or making findings.
 
 
 17
 The statute admittedly required the Board to make an "investigation," but, the Court continued, "(t)his command is broad and sweeping." Railway Clerks, supra, 380 U.S. at 662, 85 S.Ct. at 1198. No particular kind of investigation is required in every case:
 
 
 18
 We should note at the outset that the Board's duty to investigate is a duty to make such investigation as the nature of the case requires. An investigation is "essentially informal, not adversary"; it is "not required to take any particular form." (Footnote omitted.)
 
 
 19
 Railway Clerks, supra, 380 U.S. at 662, 85 S.Ct. at 1198. (emphasis added). The Court then approved the sufficiency of the investigation that led to the Board's resolution of the class or craft question. The Board initially had chosen a unit that was "well-recognized" under prior Board determinations and had "proven satisfactory in actual experience." Id. at 665, 85 S.Ct. at 1200. The Court outlined the balance of the Board's preelection "investigation":The Board received the Brotherhood's application; it requested, received and considered statements from the carrier and the Machinists. On the basis of these preliminary actions, it scheduled an election. But it continued to correspond with United, accepting and studying its detailed application for reconsideration of the Board's decision to proceed to election in the R-1706 craft or class. Viewed alongside prior experience with the R-1706 grouping in the air transport industry this procedure clearly complied with the statutory command that the Board "investigate" the dispute. The only missing element of the required investigation is the election and that can now be held promptly.
 
 
 20
 Id. at 666, 85 S.Ct. at 1200.
 
 
 21
 Comparatively we cannot say on this record that the Board acted in excess of its powers or contrary to a statutory provision. The affidavit of the employer's vice-president, Robert Grammer, reveals evidence of the Board's investigation: the Board requested and received from SMB a list of 68 qualified pilots and co-pilots; the NMB Mediator Edward Hampton met with SMB legal counsel and Grammer to discuss the eligibility of two particular employees; subsequent to the meeting SMB submitted a revised list of eligible employees, omitting the two who had been discussed; pursuant to a later request by Mediator Hampton SMB submitted to the Board a letter explaining the work assignments and duties of three specified employees; finally prior to the election the Board notified SMB of the disqualification of two other employees.
 
 
 22
 Grammer's affidavit further stated, however, that the Board had not requested information from SMB about employees Barber, Milner or Worden, or informed SMB that their eligibility was contested.
 
 
 23
 Based on these facts admitted by SMB, we conclude that the Board did undertake to "investigate" the dispute and to designate who might participate in the election. We agree with the district court that "Plaintiff appears to be challenging the quality and result of that investigation, focusing upon certain allegedly erroneous resolutions of voter eligibility made by the Board."
 
 
 24
 From a letter to SMB's counsel from the Board on May 7, 1976, referred to in SMB's complaint, and reprinted in full with the Board's summary judgment motion, it is clear that the Board had not failed to give consideration to Barber, Milner and Worden's eligibility:
 
 
 25
 During the course of investigation it became evident that Wilbur Barber functions as an assistant to the chief pilot and that he performs check pilot duties for the Carrier. Bill Milner also functions as an assistant to the chief pilot while James Reeves was identified in the Carrier's letter to Mediator Hampton dated March 18, 1976 as "an instructor and check pilot in the training department." All three (3) of these individuals were correctly excluded from the Mediator's finalized list of eligible voters since they perform functionally distinct work activities which would exclude them from the craft or class of Pilots and Co-Pilots.
 
 
 26
 Blaine Worden was excluded from the list of eligible voters because he performs non-pilot duties. Though the Carrier maintains that John Wold also performs non-pilot duties the Carrier failed to inform the Mediator of Wold's status and included Wold on the initial list of potential eligibles supplied to the Mediator. The Board must conclude that any post-election challenge to include John Wold on the list of eligible voters would not further the purposes of the Railway Labor Act as outlined under Section 2, therein.
 
 
 27
 Although we agree with the holding in International In-Flight Catering Co. v. National Mediation Board, 555 F.2d 712 (9th Cir. 1977) urged in support of SMB's position, we do not think the facts here present the same egregious set of circumstances; there the Board's investigation prior to certifying the union consisted solely of comparing signatures on the "Request for Election" cards with signatures from the employer's payroll records, even though it was clear that the cards were requests for an election only and were not votes for representation without an election.
 
 
 28
 The present case is more like WES Chapter v. National Mediation Board, 114 U.S.App.D.C. 229, 314 F.2d 234 (1962) where an eligibility decision of the Board was challenged and the court declined review: "(T)he challenge by appellant does not go beyond asking for a different solution to a mixed factual and legal issue which has been solved by the Board in a manner not clearly contrary to its statutory, including its rule-making, authority." Id., 114 U.S.App.D.C. at 232, 314 F.2d at 237.
 
 
 29
 We conclude that the Board did not abrogate a statutory duty in this case, and because sufficient facts to sustain this holding appear from SMB's filings we will not consider the allegation that the district court erred in not enforcing discovery against the Board which sought information about the investigation.
 
 
 30
 SMB also claims that it was unconstitutionally excluded from participation in the Board's eligibility determinations, and that it should have been given timely notice of challenges to employee eligibility, plus a chance to present evidence regarding those persons who were excluded.
 
 
 31
 These procedural due process claims are adequately answered in Railway Clerks, supra, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133. There, as here, the employer had argued:
 
 
 32
 (T)hat since the Act compels it to treat with the representative chosen by the majority of its employees * * * it has a direct and substantial interest in the scope of that unit; and since the Act provides for no administrative or judicial review, due process requires that it be accorded an opportunity to participate in the proceedings by which the Board determines which employees may participate.
 
 
 33
 Id. at 660, 85 S.Ct. at 1198.
 
 
 34
 The Court answered first by saying that "the Act does not require a hearing." (The Board itself may designate who participates or may appoint a committee of three neutral persons who after a hearing shall designate the electorate.) Railway Clerks, supra, 380 U.S. at 666, 85 S.Ct. at 1201.
 
 Secondly, the Court said:
 
 35
 Nor does the Act require that United be made a party to whatever procedure the Board uses to define the scope of the electorate. This status is accorded only to those organizations and individuals who seek to represent the employees, for it is the employees' representative that is to be chosen, not the carriers'. Whether and to what extent carriers will be permitted to present their views on craft or class questions is a matter that the Act leaves solely in the discretion of the Board.
 
 
 36
 Id. at 666-67, 85 S.Ct. at 1201 (emphasis added).
 
 
 37
 The Court pointed out that an employer is "under no compulsion to reach an agreement" with the Board-certified representative. Concerning the nature of the employer's alleged interest, the Court said:
 
 
 38
 (W)hile the Board's investigation and resolution of a dispute in one craft or class rather than another might impose some additional burden upon the carrier, we cannot say that the latter's interest rises to a status which requires the full panoply of procedural protections.
 
 
 39
 Id. at 667, 85 S.Ct. at 1201 (emphasis added).
 
 
 40
 It is clear that the Board did consider some of SMB's proffered evidence in this case subsequent to the election, and in fact reversed its eligibility decision as to Shaw.
 
 
 41
 We conclude that the Board's eligibility decisions and election certification are not subject to further review; the Board has not violated a statutory duty in its conduct of the investigation; it has not failed to satisfy constitutional requirements because it did not further consult SMB or make SMB a party to the proceedings which designated the employee electorate.[5]
 
 
 42
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The ballots were printed with only two alternatives presented to the employees: 1) to vote for the Teamsters; and 2) to vote for another union to be written in. The failure to include a box for no union representation probably accounts for the fact that only 30 votes were cast; and in an election as close as this could, in our opinion, have made a difference in the outcome. However the Supreme Court has specifically approved this form of ballot in NMB elections. Brotherhood of Railway & Steamship Clerks v. Association For the Benefit of Non-Contract Employees, 380 U.S. 650, 668, 669 n. 5, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965)
 
 
 [2]
 According to an affidavit supplied by the Board pursuant to our request at oral argument, Shaw's elimination from eligibility reduced the number of eligible voters from 59 to 58. There still however were 30 votes for the union and the affiant certified that Shaw had not voted
 
 
 [3]
 Judge Stuart writes:
 The Court is not satisfied with the result it feels compelled to reach under the authorities. Defendants state that at the present time we are not "in tune" with the circumstances existing when the Railway Labor Act created the NMB. I believe it is more accurate to state that NMB's authority and procedures are out of tune with the realities of modern day labor-management relationship and current due process concepts. Had standing been shown, serious due process questions would have been presented. Perhaps Congress or the appellate courts will take steps to remove this anachronism. See the chastisement of the NMB in International In-Flight Catering Co., Ltd. v. National Mediation Board, decided by the Ninth Circuit June 10, 1977.
 
 
 [4]
 In Switchmen's Union v. National Mediation Board, 320 U.S. 297, 300, 64 S.Ct. 95, 88 L.Ed. 61 (1943), it had been held that the court did not have the power to review a decision of the Board, objected to by a union, which designated all yardmen of the carriers in the New York Central System as participants in the same representation election
 
 
 [5]
 It is unfortunate that the statutes, and cases interpreting them, permit such unilateral and arbitrary imposition of a union upon a carrier without a hearing of any sort. The protections afforded a noncarrier employer by the National Labor Relations Act are much to be preferred. But the responsibility to make that decision rests with Congress and not this court