AIR LINE PILOTS ASSOCIATION, INTERNATIONAL and Mark E. Ingram, Plaintiffs,

v.

SCHEDULED SKYWAYS, INC., et al., Defendants.

SCHEDULED SKYWAYS, INC., Plaintiff,

v.

NATIONAL MEDIATION BOARD and Air Line Pilots Association, International, Defendants.

Civ. Nos. 82–5147, 83–5005.

United States District Court, W.D. Arkansas, Fayetteville Division.

June 22, 1983.

James Youngdahl, Youngdahl & Larrison, Little Rock, Ark., and Gary Green and Robert A. McCullough, Air Line Pilots Association, Int'l, Washington, D.C., for plaintiff in No. 82–5147.

Jefferson D. Kirby, III, Ford & Harrison, Atlanta, Ga., and Jim Hunter Birch, Rose Law Firm, Little Rock, Ark., for defendants in No. 82–5147 and plaintiff in No. 83–5005.

Robert A. McCullough, Legal Dept. Air Line Pilots Association, Int'l, Washington, D.C., Jay Youngdahl, Youngdahl & Larrison, for Air Line Pilots Assn., Int'l, Little Rock, Ark., and Jose I. Sandoval, Atty., Dept. of Justice for National Mediation

Board, Civ. Div., Washington, D.C., for defendants in No. 83–5005.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### Introduction

These consolidated matters arise out of a dispute, sometimes bitter, between Scheduled Skyways, Inc. (Skyways), and the Air Line Pilots Association (ALPA), and some of Skyways' employees arising out of an attempt by the employees favorable to ALPA and by ALPA to unionize the Skyways pilots. The dispute resulted in the filing of Case No. 82–5147 by ALPA and Mark E. Ingram, a discharged pilot of Skyways, seeking judgments and orders of the Court: declaring that Skyways' discharge of Ingram was motivated by his union activities in violation of 45 U.S.C. § 152, Third and Fourth; declaring that Skyways by certain described actions sought to coerce plaintiffs and the Skyways pilots in their efforts to organize and select a collective bargaining representative and to bargain collectively, thereby violating the above cited statute; permanently enjoining Skyways and persons acting for them from unlawfully interfering with, influencing, or coercing the pilots in the exercise of their statutory rights to organize; ordering Skyways to reinstate Ingram; ordering Skyways to post a copy of the Court's order in a conspicuous place on company facilities; awarding Ingram compensatory damages more specifically described in the complaint and punitive damages for willful and deliberate violations of the Railway Labor Act, and awarding Ingram reasonable attorney's fees.

The plaintiff sought a preliminary injunction and after an evidentiary hearing held on October 4, 1982, the Court declined to grant the injunction for reasons stated on the record.

Subsequently, on January 13, 1983, Skyways filed Civil Action No. 83–5005 against ALPA and the National Mediation Board (NMB), seeking declaratory and injunctive relief, contending that the NMB's certification of ALPA as the designated and authorized bargaining agent for certain of Skyways' employees was invalid for the reason that at the time of such action the NMB consisted of only one member, the remaining two members having earlier resigned. ALPA counterclaimed in this action seeking preliminary and permanent injunctions prohibiting Skyways from taking certain specifically described actions which it alleges interferes with the employees and ALPA's right to organize the Skyways pilots. It also seeks in the counterclaim judgment for compensatory damages and punitive damages resulting from what it alleges to be Skyways' willful and deliberate violations of the Railway Labor Act.

Each of the parties to this action have filed motions for summary judgment and/or motions for judgment on the pleadings, contending that the Court should grant the relief prayed for by each of them as a matter of law. The attorneys for the parties have submitted extensive and excellent briefs in support of their motions and in opposition to the motions filed by their adversaries. The Court has carefully considered the very substantial issues raised by the parties, and is prepared to rule.

### Facts

The facts necessary to rule on the various motions are not substantially, if at all, in dispute. As indicated, Skyways is a regional common carrier by air, admittedly engaged in interstate commerce and admittedly subject to the provisions of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ALPA is a union of airline pilots, recognized or certified as the collective bargaining representative for airline pilots employed by a number of air carriers across the country. The National Mediation Board is an agency of the United States created by amendments to the Railway Labor Act, specifically 45, United States Code § 154. It is authorized by the Act to exercise various powers and perform various functions in connection with representation disputes and the certification of labor unions to act as collective bargaining repre-

sentatives for the employees of covered common carriers.

On July 23, 1981, the services of the NMB were invoked by ALPA to investigate and determine whether ALPA was to be certified to represent certain employees of Skyways in collective bargaining. In its application for investigation of representation dispute filed on that date, ALPA claimed that: "A dispute has arisen among the employees of Scheduled Skyways as to who are the representatives of these employees designated and authorized in accordance with the requirements of the Railway Labor Act."

Pursuant to the Act, the NMB investigated the claim and subsequently determined that an election was necessary. On September 3, 1982, the NMB mailed ballots to Skyways pilots and co-pilots for purposes of conducting the election. The ballots were counted on September 27, 1982, and the count showed that 43 of 73 eligible voters voted in favor of ALPA. On September 28, 1982, the NMB issued a certification stating "that [ALPA] has been duly designated and authorized to represent for the purposes of the [RLA], the craft or class of Pilots and Co-Pilots, employees of Scheduled Skyways, its successors and assigns." The certification stated that it was being issued "by order of the NATIONAL MEDIATION BOARD."

Skyways does not, at least at this point, challenge the results of the Board's investigation and subsequent election, but, instead, alleges that the Board's action is void because at no time during the proceedings did the NMB have more than one member, although the creating statute (45 U.S.C. § 154) established a three-member board and provided, *inter alia,* that: "Two of the members in office shall constitute a quorum for the transaction of the business of the board."

In this regard, all parties agree that prior to June 1, 1982, one of the three members of the board resigned, and on that date a second member resigned, leaving only one member from June 1 until October 12, 1982, when an additional member was sworn into office. *See* Affidavit of Rowland K. Quinn, Jr., Executive Secretary of the National Mediation Board, Government Exhibit "B" to its motion for a stay of proceedings or, in the alternative, for an enlargement of time, filed in the consolidated actions May 12, 1983. Skyways has refused to bargain with ALPA or the pilots allegedly represented by it pending a determination of the validity of the purported certification.

### *Discussion of Applicable Law and Decision of the Court*

█ It is appropriate to first discuss and dispose of the NMB's motion for a stay of proceedings or, in the alternative, for an enlargement of time. On May 12, 1983, the date that the NMB's response to the motion for summary judgment in Case No. 83–5005 was due, the attorney for the NMB filed such motion, requesting that this Court stay proceedings in this matter until the United States Court of Appeals for the District of Columbia Circuit decided the case of *Railroad Yardmasters of America v. Robert O. Harris and the National Mediation Board,* an appeal of a decision by Judge June Green of the United States District Court for the District of Columbia deciding adversely to the NMB the exact question raised in this case in relation to the "quorum question." It is contended by the government that this case should be stayed to "conserve judicial resources and avoid possibly conflicting judicial decisions on an issue of national import . . ." The government contends that the NMB has decided a great number of issues during the period when it had only one member and that a decision by this Court adverse to the NMB or in conflict with the decision in the D.C. Circuit "would disrupt the NMB's role as mediator in the particular sensitive area of labor-management relations."

In this regard, the Court believes that this hotly-contested dispute should be decided by this Court and, if necessary, by the Court of Appeals for the Eighth Circuit, as expeditiously as possible so that all of the parties to this action can determine "where they stand" and can proceed accordingly.

The matter is set for trial in the near future, and it is only fair to the parties that they be advised of their respective legal positions as quickly as possible so that the uncertainties of this unfortunate dispute can be resolved. For these reasons, the Court has previously advised the parties by telephone that the motion for a stay would be denied. A briefing schedule was set which has now been complied with by the attorneys for all parties.

The Court will first discuss Skyways' contention that the NMB's certification of ALPA is invalid for the reason that the board only had one member at the time that the certification was purportedly made.

■ However, before reaching this issue, the Court must first decide whether Skyways has "standing" to raise this issue. The NMB vigorously argues that it does not, contending, among other things, that there is no case or controversy for this Court to decide and that Skyways has not alleged a personal stake in the outcome of the controversy sufficient to warrant invocation of the federal court's jurisdiction and to justify exercise of the Court's remedial powers on its behalf. In support of this contention, the government cites a number of cases on "standing,"[1] none of which even arguably involve the issues with which this Court is faced. The NMB has failed to cite any cases directly on point supporting its view. As noted in its brief the Courts of Appeal of two separate circuits have ruled adversely to its position, but it argues that these cases were decided before the United States Supreme Court clarified and narrowed the doctrine of standing in cases such as *Valley Forge Christian College, supra,* and concludes that the clarification "would place grave doubt on the current viability on what two courts perceived as the implied holding in *Railway Clerks.*" The Court believes that that contention is without merit

and concludes that the decision of the Court of Appeals for the Ninth Circuit in *International In-Flight Catering Co. v. National Mediation Board,* 555 F.2d 712 (9th Cir. 1977), and of the Court of Appeals for the Second Circuit in *British Airways v. National Mediation Board,* 685 F.2d 52 (2d Cir.1982), correctly interpreted the United States Supreme Court holding in *Railway and Steamship Clerks v. Association for Benefit of Non-Contract Employees,* 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965).

In the *British Airways Board* case, *supra,* the Court was faced with the same argument that the NMB makes in this case. In that case, as in this one, the NMB argued that the Railway Labor Act precluded a carrier from "initiating a district court challenge to certification by the NMB under Article 2, Ninth," and that the carrier was "obliged to wait until the certified union sued to enforce the carrier's obligation to 'treat with' the employees' representative and then assert whatever limited defenses may be available." (citing cases.) After considering this contention, the Court stated that, however framed, the issue had been implicitly resolved in favor of the carrier's right to litigate by the Supreme Court's decision in *Brotherhood of Railway and Steamship Clerks, supra.* As the Court noted, the Supreme Court in that case was specifically faced with a question raised in the petition for certiorari of: "Does a carrier have judicial standing to complain of the ballot form?" As noted by the *British Airways Board* court, the Supreme Court granted the petition without limitation, and adjudicated the merits of the claim, thus implicitly holding that a carrier had standing to challenge NMB decisions concerning the certification of the representative of its employees.

Likewise, in *International In-Flight Catering Co., supra,* the Court of Appeals for

---

1. *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975), quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Winpisinger v. Watson,* 628 F.2d 133 (D.C.Cir.1980), *cert. denied,* 446 U.S. 929, 100 S.Ct. 1867, 64 L.Ed.2d 282 (1980).

the Ninth Circuit was faced with this identical issue and also held that the Supreme Court had already implicitly decided this issue.

Not only have the Ninth Circuit and the Second Circuit explicitly determined the standing issue adversely to the position of NMB, like the United States Supreme Court, the Court of Appeals for the Eighth Circuit has also implicitly recognized that a carrier has the right to litigate such issue. In *Sedalia-Marshall-Boonville Stage Line, Inc. v. National Mediation Board,* 574 F.2d 394 (8th Cir.1978), the Court took jurisdiction of and considered the action of an employer in challenging the NMB's certification of a union as a bargaining representative of its employees. Rather than deciding that it had no jurisdiction to face this issue, the Court considered it and held that the record did not show that "the Board acted in excess of its powers or contrary to a statutory provision." *Id.* at 398. Thus, by doing so, it, implicitly at least, held that a carrier does have standing to raise such issue.

Since the Court believes that the issue of standing raised by the NMB has been explicitly and correctly decided by the Second Circuit and Ninth Circuit, and correctly, albeit implicitly, by the United States Supreme Court and by the Court of Appeals for the Eighth Circuit, the Court chooses to follow these decisions which are on point rather than the cases cited by the NMB which discuss, in a general way only, the issue of standing. The Court concludes that Skyways has standing to raise the question of the validity of the certification order of NMB.

■ That brings the Court to the question of the effect of the failure by the Executive Branch and Congress to timely fill vacancies created by the resignation of two of the three members of the Board. As noted above, all parties agree that from June 1, 1982, when member Robert J. Brown resigned, the Board had only one member until a second member took office on October 12, 1982. There are presently only two members of the Board. In its

brief, the government points out that on February 4, 1982, the President nominated George S. Roukis and his nomination was confirmed by the Senate on March 15, 1982, but that the confirmation was vitiated on the same date for some unexplained reason. Thereafter, on June 14, 1982, the President withdrew Mr. Roukis' nomination and did not nominate another member until September 17, 1982. This nominee was not confirmed by the Senate until October 1, 1982, and was sworn into office on October 12, 1982. Thus, there is no question but that during all of the proceedings in this matter there was only one Board member.

Thus, the question logically arises whether the National Mediation Board is, in fact, a board when it consists of only one member. The Court cannot resist pointing out that it certainly requires strained logic and reasoning to argue that one member is a board. It is somewhat akin to saying that one goose makes a flock of geese or one basketball player makes a basketball team.

Not only is simple logic strained by the contention of the government, in the Court's view, the law does not support the NMB's position in this regard. 45 U.S.C. § 154 provides:

> Vacancies in the Board shall not impair the powers or affect the duties of the Board nor of the remaining members of the Board. Two of the members in office shall constitute a quorum for the transaction of the business of the Board.

The parties have extensively discussed in their briefs the legislative history of the Act and have each cited portions of the history which they believe support their views in this respect. For an excellent discussion of the history of the Act, *see Summit Airlines v. Teamsters Local Union No. 295,* 628 F.2d 787 (2d Cir.1980). However, the Court believes that the language used by Congress in the Act is plain and unambiguous and a resort to legislative history is unnecessary. The statute says, rather explicitly, that a quorum consists of two members. Since that is the case, it is elementary that, in order for the Board to transact business or, in fact, even be a Board, it

must have at least two members. It is true that the sentence preceding this one states that vacancies shall not impair the powers or affect the duties of the Board, but it is significant to note that that sentence is immediately followed by the one which requires two members to constitute a quorum. Thus, the Court believes that the statute clearly provides that the Board cannot act and is not, in fact, a Board unless it has at least two members.

45 U.S.C. § 154, Fourth, provides:

The Mediation Board is authorized by its order to assign, or refer, any portion of its work, business, or function arising under this chapter or any other act of Congress or referred to it by Congress or either branch thereof, to an individual member of the Board or to an employee or employees of the Board to be designated by such order for action thereon...."

On June 2, 1982, immediately before one of the two remaining members of the NMB resigned, the two members issued a delegation order which provided:

Pursuant to Section 4, Fourth, of the Railway Labor Act, 45 U.S.C. § 154, Fourth, the undersigned Members of the National Mediation Board hereby do authorize and empower Robert O. Harris, Member of the National Mediation Board, to exercise without further authorization all official actions whatsoever on behalf of the National Mediation Board under the Railway Labor Act or any other authority. This Order will become effective on June 1st 10:05 A.M. and will expire upon the taking of office of a new Board Member, or upon revocation by Board Member Robert J. Brown.

The government argues that by reason of the quoted section and by reason of the quoted delegation order, the one remaining member of the Board was entitled to act as a Board, apparently forevermore. Again, that stretches logic and reasoning well past the breaking point. If Congress intended to allow that to occur, there is no reason for there to be a three-member Board and there is no reason for Congress to have enacted the clause which requires there to

be two members to constitute a quorum. 45 U.S.C. § 154, Fourth, admittedly authorizes the Board to refer any portion of its work or business to a member or to employees, but it does not authorize the Board to delegate its function and its very reason for existing to employees. Carrying that argument to its logical conclusion, there would be no reason for a Board at all if, before all members resign, they delegated all of the Board's functions to a secretary in the office. Presumably, the secretary could continue to operate as a Board, and there would be no reason for the President and Congress to fill any vacancy.

As noted above, the NMB initially moved for a stay of proceedings pending the resolution of an appeal of the case of *Railroad Yardmasters of America v. Robert O. Harris and National Mediation Board, supra.* In that case, Judge June Green of the United States District Court for the District of Columbia was faced with the identical question faced by this Court. In an excellent but unpublished opinion, Judge Green analyzed the provisions of the statute involved and the government's arguments. In considering the contention by the NMB that two members had the power under 45 U.S.C. § 154, Fourth, to delegate all of its functions to one member, Judge Green, after noting that the second member resigned five minutes after the delegation order was entered, stated:

These decisions make clear that the quorum provisions must be construed literally. Therefore, the Court holds that the NMB exceeded its statutory authority under 45 U.S.C. § 154 when it took the two actions complained of. One member cannot constitute a quorum under § 154, First.

The Court also finds that the order of June 1, 1982, purporting to authorize Robert Harris "to exercise without further authorization all official actions whatsoever" of the NMB exceeds the delegatory intent of 45 U.S.C. § 154, Fourth ... The NMB was without power on June 1, 1982, to delegate its authority with respect to the dispute between RYA

and YSC because it was not yet before the Board. The YSC did not file an application with the Board until June 10, 1982, nine days after Chairman Brown's retirement (citing the Complaint). It strains statutory interpretation to suggest that the quorum provisions could be overcome simply by signing an order stating that one member would hereinafter act on behalf of the Board.... Defendant's contention that 45 U.S.C. § 154, Fourth, enables circumvention of the quorum provisions must be rejected. Congress established the NMB as a three-member Board in 1934 and included an explicit quorum provision, requiring two members to take Board action. The legislative history of the 1934 amendments to the Railway Labor Act is silent on the purpose of the delegation provisions set forth in 45 U.S.C. § 154, Fourth. However, the Court cannot accept defendant's interpretation of this provision.

The attorney for the NMB has earnestly and very competently argued that an adverse ruling by this Court would constitute a "grave threat of disruption of the nation's railroad and airline industries." The government argues that such a ruling would adversely affect numerous decisions and actions taken by the Board throughout the United States while this quorum problem existed. The Court agrees with Judge Green's conclusion in that regard:

> The Court recognizes the important role of the NMB in maintaining labor peace in the railway and airline industries. However, the Court cannot ignore the clear statutory language of the Railway Labor Act. It is the responsibility of the President and the Congress to maintain the Board at proper working levels. If massive disruption of interstate commerce is likely to result without an operational NMB, as defendant contends, then it is the responsibility of the President and the Congress to appoint new members in a timely fashion. The Court cannot allow one member to act as the Board. Accordingly, the Court grants plaintiff's permanent injunction and enjoins defendant

from giving force and effect to the order and certification of the NMB issued ....

The Court concludes that the NMB clearly exceeded its statutory authority, and acted without authority in certifying the ALPA as the bargaining representative of certain employees of Skyways in this case.

■ The Court has also considered the NMB's contention that Skyways is barred from judicially challenging the authority of the one-member Board to act because it did not challenge the Board's competency administratively, and finds that such contention has no merit.

In view of the above, the Court will grant Skyways' motion for summary judgment and will enter a judgment declaring that the NMB's processing of ALPA's application to represent the Skyways pilots and co-pilots and its issuance of the certification dated September 28, 1982, is null and void for the reasons set forth above. Skyways also requested in such action that the Court enter a preliminary and permanent injunction, enjoining the defendants, their agents, and employees from giving any legal force and effect to such certification. In view of the declaratory judgment which will be entered, the Court finds that injunctions are not necessary and that request will be denied.

■ That now leaves for the Court's consideration and determination the question of what effect the Court's ruling in relation to the certification has upon the claims of Mark E. Ingram and ALPA. Taking what the Court believes to be the easier issue first, the motion for summary judgment in relation to the claims of Ingram will not be granted. The Court believes that there are questions of fact to be determined in relation to his claim that he was wrongfully discharged for union activities and the damages which he alleges resulted therefrom and that resolution of these issues by summary judgment is not appropriate.

As to the claims of ALPA contained in these two lawsuits, they may be placed in three categories. In Case No. 82–5147, ALPA alleges interference with the union-

ization process by conduct of Skyways' officers which it alleges to have occurred and which it alleges resulted in attempts to influence or coerce the Skyways pilots to prevent them from exercising their statutory rights to freely select a collective bargaining agent. There are also some allegations relative to interference contained in ALPA's counterclaim in Case No. 83–5005.

In Case No. 82–5147, ALPA prays for a judgment for punitive damages, but does not allege any right to compensatory damages.

As indicated above, in the counterclaim in Case No. 83–5005, ALPA makes some allegations and prays for some relief in relation to the interference claim, but the cause of action or claim for relief set forth in the counterclaim is primarily a refusal to bargain claim. ALPA seeks a preliminary and permanent injunction directing Skyways to bargain collectively and in good faith and seeks damages for its failure to do so.

■ Again taking the easier issue first, ALPA's claim for punitive damages in Case No. 82–5147 is clearly without merit. Absent a claim for compensatory damages, a party may not generally recover punitive damages. *Cronin v. Sears, Roebuck & Co.*, 588 F.2d 616 (8th Cir.1978).

■ The question of whether Skyways, in spite of the invalidity of the certification issued by NMB, is statutorily bound to bargain in good faith with ALPA, and whether the Court should order it to do so, is substantially more difficult. ALPA, in effect, argues that since Skyways does not contest the election and does not contend that ALPA does not represent a majority of the Skyways pilots, it is bound by the Railway Labor Act to bargain in good faith irrespective of the fact that NMB has not validly certified it as the bargaining representative of the pilots. It argues that NMB certification under the Act is not a necessary predicate to judicial enforcement of the obligation to bargain. In other words, it is not necessary for a union seeking to represent employees of carriers covered by the Railway Labor Act to comply with the provisions of Section 2, Ninth, as amended, 45 U.S.C. § 152, Ninth, before having the right to demand that the employer bargain in good faith and the attendant right to enforce this alleged obligation by federal court action. It, in essence, contends that Section 2, Ninth, does not apply unless there is a dispute between unions as to which union represents the employees and, since that is not present in this case, that, even if the certification is invalid, the Court should still determine that ALPA represents the employees of Skyways and should, thus, order it to "treat with them" as compelled by the Railway Labor Act.

The Court does not believe that that position is supported by the statutes or by the cases interpreting the statutes. In short, the Court concludes that the certification process required by Section 2, Ninth, is mandatory and that federal courts should not get involved in determining whether a union represents the employees of an employer since that duty has been delegated by Congress to the NMB.

ALPA argues that the Section 2, Ninth, certification process is mandatory only in those cases where more than one union seeks to represent the same employees and there is a dispute about which of those is the selected representative. Following that argument to its logical conclusion, the NMB would not be necessary in any case in which only one union seeks to represent a class of employees, as is the case in most instances, or at least in many instances. Instead, the union would get what it believes to be the requisite number of signature cards signed and would then demand that the employer bargain with it. If it refused, suit would be filed in federal court and the court would then be expected to determine whether, in fact, the requisite majority of employees desired to be represented by that particular union, and any other issues relative to proper representation. In short, federal courts would take the place of or at least could take the place of the NMB in all situations where only one union sought to represent a class of employees. Federal courts are simply not the proper forum to determine such issues—the NMB is.

The Court believes that the conclusion that it has reached in this regard is supported by the law. *See Virginian Railway v. System Federation No. 40,* 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937); *General Committee of Adjustment v. Missouri-Kansas-Texas Railroad,* 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943); and *Summit Airlines, Inc. v. Teamsters Local Union No. 295,* 628 F.2d 787 (2d Cir.1980).

In the *Summit* case cited by the Court of Appeals for the Second Circuit in 1980, a case in which ALPA appeared as *amicus curiae,* the Court was faced with a controversy in which the Teamsters sought to do exactly what is described above. It sought to represent cargo handlers employed by Summit at its operations at John F. Kennedy International Airport in New York. It obtained signature cards signed by all of the handlers at that location. Apparently because the union recognized that it had been NMB's policy not to certify a union which attempted to represent less than all of the employees in a particular system, the Teamsters chose not to seek certification. Instead, it demanded that the employer bargain with it and when the carrier refused, it picketed Summit's facilities and took other coercive action. Suit was filed by Summit to enjoin the pickets and other action.

In framing the issue before it, the Court said:

> The question now before us is whether, upon such refusal, the union had to comply with the election and certification procedures of Section 2, Ninth, of the Act, 45 U.S.C. § 152, Ninth, or whether it was free to ignore Section 2, Ninth, and attempt to enforce recognition through picketing and other forms of economic coercion.

After discussing the legislative history, it concluded that nothing in the history indicated that Congress intended to make the certification process optional. It said:

> As the *Brotherhood of Trainmen v. Chicago River & I.R.R.,* 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957) Court said with regard to section 3, First, a holding that a union may ignore the section 2, Ninth, procedure and resort instead to economic coercion would render the procedure "meaningless."

It said that if the Teamsters Local could ignore the statutory procedure simply because it sought to represent less than a class-wide majority, it must follow that the union could, in other cases, ignore the procedure. The Court stated:

> We conclude that Congress did not intend that resort to the mechanisms of section 2, Ninth, be optional in either case.

There is certainly no indication in the legislative history that the Court intended the certification process to apply only where there are competing unions seeking to represent the same employees, and it is certainly not logical to conclude that this was Congress' intent. Instead, the legislative history shows that what Congress sought to do was promote peace and harmony in the industry, an end that certainly would not be promoted if a union could ignore the certification process and resort to strikes or other coercive action or seek the somewhat cumbersome remedy of enforcing alleged rights in federal courts.

The Court concludes that the Section 2, Ninth, certification process is mandatory in every case, and that this Court cannot and should not wander into the thicket which ALPA has invited it to enter by attempting to substitute itself for the function delegated to the NMB by Congress. For these reasons, ALPA's motion for summary judgment in respect to its counterclaim in Case No. 83–5005 will be denied, and Skyways' motion for summary judgment in respect to the counterclaim will be granted and the counterclaim in that case dismissed.

The issue which has given this Court the most difficulty is whether this Court can and should consider ALPA's claim contained in Case No. 82–5147 that Skyways has interfered with the unionization process, and that the Court should provide a remedy. This Court philosophically believes that issues such as these are best left to bodies which have some expertise in the

field and that federal judges, coming from widely diverse backgrounds, should not attempt to, or be asked to, "run the country." In the Court's view, federal courts should not be expected to "referee" union elections. However, after reviewing carefully the Railway Labor Act, the Court believes that Congress has not even come close to adequately providing for the resolution of disputes such as the one involving the interference issue in this case. The NMB has almost no power to prevent or remedy coercion by an employer. About all it can do is to ask the employer to "please not do that because it's not nice." As the Court said in *Burke v. Compania Mexicana de Aviacion, S.A.,* 433 F.2d 1031 (9th Cir.1970):

> To hold, in this case, that Burke may not bring suit for a violation of section 24 would leave a gap in the enforcement of that section which would blunt the effectiveness of the Congressional purpose. So long as a carrier's interference with its employees' right to freely organize were swift and forceful enough to prevent organization of a union altogether or to coerce employees into joining a company-dominated union, the carrier would have acted with impunity.

The Ninth Circuit's words apply equally in this case. If the Court accepts Skyways' argument, as long as the employer acts swiftly and acts decisively and interferes to the extent that the unionization effort fails, it may act with impunity. As noted, the NMB has very little authority to prohibit the coercive conduct, and if the conduct is successful and an adequate number of the employees are coerced into refusing to sign the necessary authorizations or to vote for the union, the NMB cannot certify the union under the Section 2, Ninth, procedure. So the employer wins.

That simply cannot be the law and, in the Court's view, is not the law. The fact that Congress has left a large hole in the enforcement procedure is not the concern of this Court. The fact simply is that, unlike the National Labor Relations Board, the NMB has not been supplied by Congress with the "tools" to adequately determine these kinds of issues and, since that is true, one cannot say with much conviction that those matters have been delegated by Congress to the NMB and that, thus, federal courts should not become involved.

In the Court's view, by far a majority of the federal courts which have been faced with this issue have held that they have subject matter jurisdiction to resolve alleged violations of Section 2, Third and Fourth, of the Act,[2] including the issuance of injunctive relief restraining unlawful carrier influence, interference or coercion.[3]

In summary, the Court finds that Section 2, Third and Fourth, of the Railway Labor Act prohibits the employer from interfering with, influencing, or coercing its employees in relation to a representation contest and that federal courts have jurisdiction and have the duty to enforce those sections since the power to do so has not been delegated by Congress to the NMB, or any other agency. Skyways' motion for sum-

2. *See, e.g., Texas & N.O.R. Co. v. Brotherhood of Railway Clerks,* 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034 (1930); *Virginian Ry. Co. v. System Federation No. 40,* 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937); *Brady v. Trans-World Airlines, Inc.,* 401 F.2d 87 (3rd Cir.1968); *Burke v. Compania Mexicana de Aviacion, S.A.,* 433 F.2d 1031 (9th Cir.1970); *Conrad v. Delta Airlines, Inc.,* 494 F.2d 914 (7th Cir.1974); *Adams v. Federal Express Corp.,* 547 F.2d 319 (6th Cir.1976); *APAIA v. Alaska International Air,* 96 LRRM 3233 (D.Alas.1976); *Airmen v. Alaska Aero. Industries,* 95 LRRM 2867 (D.Alas. 1977); *Kent v. Fugere,* 438 F.Supp. 560 (D.Conn.1977); *Brotherhood of Railroad Trainmen v. Richmond, F. & P. Ry. Co.,* 69 LRRM 2884 (E.D.Va.1968); *Bro. of Ry., Etc. v. Phila-* delphia Bethlehem, Etc., 428 F.Supp. 1308 (E.D. Pa.1977); *IAM v. Altair Airlines,* 481 F.Supp. 1359 (E.D.Pa.1979); *Brown v. World Airways, Inc.,* 539 F.Supp. 179 (S.D.N.Y.1982); *Teamsters v. World Airways, Inc.,* 111 LRRM 2170 (N.D.Cal.1982).

3. *See, e.g., Texas & N.O.R. Co. v. Brotherhood of Railway Clerks, supra; Virginian Ry. Co. v. System Federation No. 40, supra; Adams v. Federal Express Corp.,* 470 F.Supp. 1356 (W.D. Tenn.1979); *Airmen v. Alaska Aero. Industries, supra; APAIA v. Alaska International Air, supra; Brotherhood of Railroad Trainmen v. Richmond, F. & P. Ry. Co., supra; Teamsters v. World Airways, Inc., supra.*

mary judgment in relation to ALPA's interference contentions primarily contained in its amended complaint filed in Case No. 82–5147 will be denied, and all issues in relation to the alleged interference during the selection process will be tried by the Court. The Court finds that there are questions of fact in relation to these issues and ALPA's motion for summary judgment in respect to them will be denied.

Orders and judgments accomplishing the matters discussed above will be entered.