**SCHEDULED SKYWAYS, INC.,**
**Appellee,**

v.

**NATIONAL MEDIATION BOARD, Air Line Pilots Association, International,**
**Appellant.**

**SCHEDULED SKYWAYS, INC.,**
**Appellee,**

v.

**NATIONAL MEDIATION BOARD,**
**Appellant,**

**Air Line Pilots Association,**
**International.**

**Nos. 83–1941, 83–2162.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 26, 1984.

Decided July 6, 1984.

Rehearing Denied in No. 83–1941
Aug. 21, 1984.

Gary Green, Robert A. McCullough, Washington, D.C., for Air Line Pilots Ass'n, Int'l.

Jefferson D. Kirby, III, Michael H. Campbell, Edward C. Brewer, III, Ford & Harrison, Atlanta, Ga., for Scheduled Skyways, Inc.

J. Paul McGrath, Asst. Atty. Gen., W. Asa Hutchinson, U.S. Atty., Fort Smith, Ark., Anthony J. Steinmeyer, John C. Hoyle, Attys., Civ. Div., Appellate Staff, Dept. of Justice, Washington, D.C., for Nat. Mediation Bd.; Ronald M. Etters, Gen. Counsel, National Mediation Board, Washington, D.C., of counsel.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

The Air Line Pilots Association, International (ALPA), a labor organization, claims to represent pilots employed by Scheduled Skyways, Inc., a common carrier by air. Skyways denies that ALPA is the legally recognized bargaining agent for its pilots. Skyways claims that an order of the National Mediation Board (NMB) certifying ALPA as bargaining agent is invalid. The District Court [1] held the NMB's order invalid, and the NMB appeals. ALPA also claims that Skyways has a legal duty to bargain with it, whether the NMB's order of certification is valid or not. The District Court rejected this claim, dismissing ALPA's counterclaim for failure to state a cause of action. From this ruling also ALPA appeals.

We affirm the dismissal of ALPA's counterclaim. The NMB's appeal will be held in abeyance pending further action by the Board.

## I.

In July of 1982, ALPA filed an application with the NMB for certification as the pilots' collective-bargaining representative under the Railway Labor Act, 45 U.S.C. §§ 151–88 (1982). ALPA's application was supported by authorization cards purporting to be signed by 55% of the pilots. The NMB investigated ALPA's application and ordered a secret ballot conducted by mail. The election took place in September, and according to the NMB's count, 43 of 73 eligible pilots voted for ALPA. The day following the count, the NMB certified that "[ALPA] has been duly designated and authorized to represent" the pilots of Skyways.

At the time that the NMB made this certification, it had only one member, although the Railway Labor Act, 45 U.S.C. § 154, First, establishes a three-member board and states that "[t]wo of the members in office shall constitute a quorum for the transaction of the business of the Board." (The NMB seeks to uphold its order on the ground that all its powers had been delegated to the one remaining member at a time when it had two members.)

---

1. The Hon. H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas. The District Court's opinion is reported as *Air Line Pilots Ass'n, Int'l v. Scheduled Skyways, Inc.,* 567 F.Supp. 171 (W.D. Ark.1983).

After learning that the District Court for the District of Columbia had invalidated a similar certification of the NMB, holding that only one member of the Board did not have the power to transact board business,[2] Skyways brought this suit to invalidate the NMB's certification of ALPA. In response, ALPA counterclaimed for an injunction to require Skyways to bargain with ALPA and for damages resulting from Skyways' refusal to bargain. ALPA claimed that the NMB's order was valid, and, in the alternative, that Skyways was under a legal duty to bargain with it, entirely apart from the Board's action, because it had the support of a majority of the pilots, support that, it is said, Skyways did not contest at the proper time.

As noted above, the District Court ruled for Skyways, declaring the NMB certification invalid and dismissing ALPA's counterclaim. Shortly after this ruling, in June 1983, ALPA filed a second application with the NMB for certification. Based on ALPA's second application, the NMB found a dispute existed and held a second election.[3] This time, ALPA apparently received only 37 votes out of an eligible 83. Following the announcement of the vote, ALPA filed objections with the NMB alleging that Skyways had improperly influenced some of the voters. It asked that the second election be set aside. The NMB has not acted on these objections.

## II.

The NMB appeals from the District Court's ruling that its certification of ALPA is invalid because the certification was made by only one member of the Board. In *Railroad Yardmasters of America v. Harris*, 721 F.2d 1332 (1983),

the D.C. Circuit, by a vote of two to one, has upheld the validity of one-member certifications. Skyways urges us to disagree with the D.C. Circuit, but we deem it inappropriate to reach the issue at this time. The Railway Labor Act, 45 U.S.C. § 152, Ninth, requires the NMB to resolve certification disputes within 30 days "after the receipt of the invocation of its services." If the Board rejects ALPA's objections to the second election and certifies the results as unfavorable to the union, the question of the first certification's validity will apparently be moot. Whatever the answer to that question, the union will not now be the representative of a majority of the pilots, and therefore will not be entitled to an injunction requiring Skyways to bargain with it in the future. If, on the other hand, ALPA's objections to the second election are sustained, and a sufficient number of votes are thrown out to change the ostensible result of that election, presumably the Board (which no longer has only one member) will hold that ALPA has received a majority of the valid ballots and certify it, this time with an unquestionable quorum, as the pilots' bargaining representative. In that event also, it will apparently cease to matter whether the first certification was valid. Thus, the unresolved validity of the second election (a circumstance not present in *Yardmasters*) seems to make the question of one-member certification moot.

We shall therefore hold the appeal on this issue in abeyance until the NMB finally rules on ALPA's petition for certification and ALPA's objections to the second election. We expect the NMB to issue its ruling no later than 30 days from the filing of this opinion.

2. *Railroad Yardmasters v. Harris*, No. 82–2741 (D.D.C. Oct. 8, 1982), *rev'd,* 721 F.2d 1332 (D.C. Cir.1983).

3. The regulations of the National Mediation Board provide:
   Except in unusual or extraordinary circumstances, the National Mediation Board will not accept an application for investigation of a representation dispute among employees of a carrier:

   (a) For a period of two (2) years from the date of a certification covering the same craft or class of employees on the same carrier ....
   29 C.F.R. § 1206.4 (1983).
   We assume that the NMB found that the uncertainty surrounding the validity of the first certification constituted "unusual or extraordinary circumstances."

### III.

ALPA also appeals from the dismissal of its counterclaim for injunctive relief and damages. ALPA sought injunctive relief to order Skyways to bargain. It also sought compensatory damages that allegedly resulted from Skyways' refusal to bargain. Essentially, ALPA argues that Skyways was under a judicially enforceable duty to bargain, without regard to certification, unless Skyways had a substantive objection to ALPA's majority status. Skyways did not challenge the validity of the votes cast at the first election, or dispute the finding that the majority of pilots had voted for ALPA, but based its objection to the certification solely on the quorum requirement. It follows, ALPA says, that Skyways must bargain with it, and that a court must enforce this duty.

We believe the District Court was correct in rejecting this argument. In short, the argument assumes that a judicially enforceable duty to bargain arises *prior* to a valid certification. This assumption has been rejected by the First Circuit:

> In the absence of National Mediation Board certification, 45 U.S.C. § 152 Ninth, there is no basis for finding a duty on the part of [the airline] to negotiate with [the claimed representative].

*International Association of Machinists & Aerospace Workers v. Northeast Airlines, Inc.*, 536 F.2d 975, 977 (1st Cir.1976), *cert. denied*, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 328 (1977). The First Circuit adopted this interpretation of the Railway Labor Act because of the role the Act assigns to the certification process in resolving representation disputes. The Railway Labor Act has been described as

> legislation agreed upon between the railroads and the Brotherhoods and probably unique in having been frankly accepted as such by the President and Congress .... [E]very stage in the evolution of this railroad labor code was progressively infused with the purpose of securing self-adjustment between the effectively organized railroads and the equally effective railroad unions.

*Elgin, Joliet & Eastern Railway Co. v. Burley*, 325 U.S. 711, 752–53, 65 S.Ct. 1282, 1303–04, 89 L.Ed. 1886 (1945) (Frankfurter, J., dissenting), *aff'd on rehearing*, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). Certification by the NMB was the agreed way to resolve representation disputes. Once certified, a union is authorized to bargain as the exclusive employee representative, and the employer is under the duty to "treat with" that representative. 45 U.S.C. § 152, Ninth.

Some additional support for this view is found in the language of a recent Supreme Court opinion, *Ellis v. Brotherhood of Railway, Airline & Steamship Clerks*, —— U.S. ——, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). The case involved the question whether employees could be forced to pay a share of certain union expenditures. Under Section 2, Eleventh, of the Railway Labor Act, 45 U.S.C. § 152, Eleventh, "labor organizations duly designated and authorized to represent employees in accordance with the requirements of this Act" may make agreements requiring union membership as a condition of continued employment. The Supreme Court, in paraphrasing the statute, had this to say: "Only a union *that is certified* as the exclusive bargaining agent is authorized to negotiate a contract ...." 104 S.Ct. at 1892 (emphasis ours). The Court seems to equate certification with designation and authorization of a union to represent employees. The statement, to be sure, is dictum, and only an implication at best for the present context; but inferior courts can take their cues from the Supreme Court's dicta.

Here ALPA asks us to entertain a suit in federal court to force an employer to bargain without regard to certification. Such judicial intervention would displace the certification process that Congress has enacted to deal with disputes over the duty to bargain with a claimed representative. Rather than seek to resolve such disputes by certification, parties could turn to the courts to compel employers to bargain, or to declare that a union lacks majority sta-

tus. While the courts will intervene to enforce provisions of the Act that are essential to its function and which cannot be effectively enforced by the NMB,[4] under these circumstances such enforcement is unnecessary, since the Act provides the certification process to deal precisely with representation disputes of the type raised here. Judicial enforcement sought after an employer disobeys a valid certification order of course stands on an entirely different footing.

ALPA seeks to take this case out of these general principles on the ground that the employer never questioned the union's majority status at the time of the first election. "Where there is no real question about whether a union is the legitimate representative of an airline's employees, the function of deciding the extent of the duty to bargain rests properly with federal courts." *International Ass'n of Machinists & Aerospace Workers v. Northeast Airlines, Inc., supra,* 536 F.2d at 977. But here there is a real question. Skyways never conceded the union's status, and the union itself invoked the Board's processes on the ground that a dispute existed as to representation of the pilots. Skyways did say, after the Board's one-member certification order, that a majority of the pilots had voted for ALPA, but that statement was made under the supposed compulsion of the Board's order, and cannot fairly be taken as a concession of legal status. The union's later request for a second election, granted by the Board, and resulting in a vote that remains under a cloud, is additional evidence that this is not the kind of clear and undisputed situation in which the courts should proceed without regard to Board processes. Employees and employers alike are better served by a clear line marking out the area reserved for the Board from that in which the courts may act in the first instance. We think this case falls on the Board's side of the line.

**4.** *See, e.g., Virginian Ry. Co. v. System Fed'n No. 40,* 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789

IV.

The dismissal of ALPA's counterclaim is affirmed. Skyways' duty to bargain must turn on the existence *vel non* of a valid NMB order of certification.

The appeal of the NMB from the District Court's holding that the 1982 certification order was invalid will be held in abeyance. When the NMB has ruled on the objections to the second election, it should certify its ruling to this Court. We shall then consider whether the question of the validity of the first NMB order is in fact moot, together with any other remaining relevant questions the parties wish to bring to our attention.

It is so ordered.